### The STATE ex rel. ALLSTATE INSURANCE COMPANY

v.

### GAUL, Judge, et al.

[Cite as *State ex rel. Allstate Ins. Co. v. Gaul* (1999), 131 Ohio App.3d 419.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 75048.

Decided May 13, 1999.

*McNeal, Schick, Archibald & Biro Co., L.P.A.,* and *Frederick E. Kramer,* for relator.

*McLaughlin & McCaffrey, L.L.P., Patrick M. McLaughlin, W. Joseph Melnik* and *Colin R. Jennings,* for intervenor-relators Robert C. Corn, M.D., Highland Musculo–Skeletal Associates, and Marie Millan and James Goldman.

*McCarthy, Lebit, Crystal & Haiman Co., L.P.A., David A. Schaefer* and *Charlene R. Mileti,* for respondent Judge Daniel Gaul.

*Spangenberg, Shibley & Liber, L.L.P.,* and *William Hawal,* for respondent Robert V. Housel.

*Greene & McQuillan Co., L.P.A.,* and *Jean M. McQuillan,* for *amicus curiae* Cleveland Academy of Trial Attorneys.

ROCCO, Presiding Judge.

Relator, Allstate Insurance Company, through George Sintsirmas, its Casualty Claims Manager (collectively, "Allstate"), and intervenor-relators, Robert Corn, M.D., an orthopaedic surgeon, Highland Musculo–Skeletal Associates ("HMSA"), the corporate entity of Corn's medical practice, Marie Millan, the Office Manager for HMSA, and James Goldman, C.P.A., the accountant for HMSA and personal accountant to Corn (collectively, "relators") are seeking a writ of prohibition against respondents. Relators claim that the respondent judge lacked authority to appoint a special master (respondent Robert V. Housel) in the underlying personal injury action and that in connection with that appointment, both respondents usurped their authority by continuing a court-ordered investigation into the compensation of Dr. Corn, who was never a party in the underlying lawsuit and who had been dismissed as a witness in the underlying lawsuit. This court issued alternative writs of prohibition and ordered respondents to show cause why a permanent writ of prohibition should not be issued. Having failed to meet that burden, based upon the unambiguous lack of jurisdiction and/or usurpation of authority to appoint a special master in these circumstances, we grant relators their requested relief and issue a permanent writ of prohibition as stated herein.

## I. FACTUAL/PROCEDURAL HISTORY

This prohibition action arises as a result of orders issued by the respondent judge in the lawsuit entitled *Hegedus v. Johnson and Allstate Insurance Co.*, Cuyahoga County Court of Common Pleas case No. 290943, filed June 13, 1995. The *Hegedus* case is an action for personal injury damages and underinsured motorist benefits. In the course of the litigation, the parties conducted discovery, filed various motions, and attended pretrial conferences. Defendant Johnson retained Corn to examine the plaintiff and to issue a written medical report. During discovery, the parties stipulated the confidentiality of certain materials, which the court sealed and held for *in camera* inspection only. On January 26, 1998, the court conducted a pretrial conference, scheduled a final pretrial conference for May 14, 1998, and set the case for trial on August 25, 1998.

On March 5, 1998, *sua sponte*, the respondent judge issued the following order:

"This court hereby appoints Robert V. Housel as special master in this action for the purpose of determining the issue of Dr. Corn's compensation as it relates to defense medicals. As special master, att'y Housel shall have all powers afforded by the Rules of Civil Procedure regarding discovery, including but not limited to subpoena powers, and appointing a certified public accountant. Att'y

Housel shall post no bond, and he shall be compensated at a rate of $100 per hour. Costs to be taxed against defendant."

The same day, he also ordered that certain motions be held in abeyance as follows:

"Plaintiff's 5/20/97 motion to exclude testimony of defense expert, Dr. Robert Corn, defendant's 5/28/97 motion to exclude testimony of plaintiff's expert Dr. Sanford Emery, and plaintiff's 9/23/97 motion ofr [sic] in camera inspection of medical appointment book are hereby held in abeyance."

On March 31, 1998, plaintiff settled and dismissed with prejudice his case against defendant Michael Johnson. The respondent judge signed the stipulation for dismissal and judgment entry filed that day.

On July 28, 1998, the respondent judge scheduled a discovery hearing for September 9, 1998, granted plaintiff's September 24, 1997 motion for *in camera* inspection of Corn's medical appointment book, and authorized Housel to perform the inspection. He also issued the following order:

"TO: Dr. Robert Corn

Marie Millan

James Goldman

"You are commanded to appear in the Cuyahoga County Court of Common Pleas, Courtroom 19–D, Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113, on September 9, 1998 at 2:30 p.m. to testify before the Honorable Daniel Gaul in a proceeding concerning discovery in the above-captioned case.

"You are also commanded to provide the following items to Special Master Robert V. Housel on or before August 15, 1998 at his office, Suite 1350 Illuminating Bldg., 55 Public Square, Cleveland, Ohio 44113.

"1. All Internal Revenue Service 1099 forms and/or records showing income received by Dr. Robert Corn, Highland Musculo–Skeletal Associates and/or any corporation employing Dr. Corn, from any liability insurance carrier, or any law firm or attorney.

"2. All federal, state, and local tax returns, including all attachments and forms, filed by Dr. Corn in the last five years.

"3. All federal, state, and local tax returns, including all attachments and forms, filed by Highland Musculo–Skeletal Associates and/or any corporation employing Dr. Corn for the last five years.

"4. Any office records which reflect all independent medical examinations (IMEs) conducted by Dr. Corn for the last five years, including but not limited to appointment books, computerized records, billing statements, IME reports au-

thored by Dr. Corn, and any other written or computerized documentation for such IMEs.

"5. Any office records showing all medical examinations conducted by Dr. Corn for the last five years, including but not limited to series 300 codes, appointment books, computerized records, billing statements, audit journals, monthly reports, and any other written or computerized documentation for such exams.

"6. All office records, documents, computerized data, or other documentation of any kind, including but not limited to series 300 codes and any other non-patient treatment codes, monthly reports and audit journals, which show income received by Dr. Corn, Highland Musculo–Skeletal Associates and/or any corporation employing Dr. Corn for IMEs, medical reports, depositions, and trial testimony performed by Dr. Corn for the last five years."

The judge also issued the following order:

"TO: Allstate Insurance Companies

State Farm Insurance Co., Middleburg Hts., Ohio

Auto Owners Insurance

Nationwide Insurance Co.

Progressive Insurance Co.

Motorists Mutual

State Farm Insurance Co., Bedford Hts., Ohio

"You are commanded to appear in the Cuyahoga County Court of Common Pleas, Courtroom 19–D, Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113, on September 9, 1998 at 2:30 p.m. to testify before the Honorable Daniel Gaul in a proceeding concerning discovery in the above-captioned case.

"You are also commanded to provide the following items to Special Master Robert V. Housel on or before August 15, 1998 at his office, Suite 1350 Illuminating Bldg., 55 Public Square, Cleveland, Ohio 44113:

"All Internal Revenue Service 1099 forms and/or records of any type showing income paid by you to Dr. Robert Corn and/or Highland Musculo–Skeletal Associates, Inc., an Ohio corporation, 850 Brainard Road, Highland Heights, Ohio 44143, during the preceding five years."

On or about August 11, 1998, counsel for Allstate notified the respondent judge by way of affidavit that Corn would not be called as a witness for Allstate.[1]

---

1. Although relators did not provide a file-stamped copy of the affidavit, neither respondent disputes this fact.

Relators filed various motions challenging his orders and, on August 17, 1998, Allstate instituted this action in prohibition. The respondent judge was served on August 18, and the respondent special master was served on August 19, 1998.

This court granted Allstate's application for an alternative writ of prohibition and issued an alternative writ on August 21, 1998 as follows:

"Respondents, Judge Daniel Gaul and appointed special master Robert V. Housel, are hereby prohibited from enforcing or proceeding under, in any way, the discovery orders of March 5 and July 28, 1998 issued by respondent Gaul concerning Dr. Robert Corn in Cuyahoga County Court of Common Pleas Case No. CV–290943 entitled *Hegedus v. Johnson, et al.* until further order of this court and are hereby directed to show cause, in writing, on or before September 18, 1998, why a permanent writ of prohibition should not be issued."

On August 28, 1998, Corn and his attorney learned that information sought in the July 28 order had appeared as an exhibit to a motion filed in a lawsuit entitled *Berchin v. Glassman,* C.P. case No. 321675, which was pending before a different judge. They also learned on that day that Goldman had complied with the respondent judge's order of July 28, 1998 and had delivered the requested documents to the respondent special master on August 14, 1998.

Corn, HMSA, Millan and Goldman sought, *inter alia,* emergency relief from the respondent judge to prohibit the special master from releasing documents to the public that were delivered to him under the court order and that were not filed in the litigation. The respondent judge issued the following order on September 3, 1998:

"This action is currently before this Court for consideration of the September 1, 1998 *Motion for Emergency Relief of Robert Corn, M.D., Highland Musculo–Skeletal Associates, Marie Millan, and James Goldman, C.P.A.,* wherein these non-parties requested expedited relief.

"For good cause shown, and so as to preserve the rights of the parties pending the adjudication of this action upon the writ of prohibition as recently filed with the Eight [*sic*] Appellate District Court of Appeals, this Court hereby renders the following order:

"(1) Both Special Master Robert V. Housel and counsel of record shall not distribute any documents in their possession, or disseminate the contents thereof, which respond to this Court's order dated July 28, 1998;

"(2) Both Special Master Housel and counsel of record shall contact any persons to whom they have distributed documents or disseminated the contents, and inform these persons of the following, subject to the contempt powers of this Court:

"(a) that these persons shall desist from the use or dissemination of these documents;

"(b) that these persons shall return the documents and any copies to the court under seal; and

"(c) that these persons shall hold such information confidential.

"(3) All documents submitted to this Court and Special Master Housel pursuant to this Court's orders of July 28, 1998, shall be held under seal;

"(4) The hearing set in this matter for September 9, 1998 is canceled."

On September 18, 1998, Corn, HMSA, Millan, and Goldman moved to intervene as relators in the prohibition action instituted by Allstate.

On September 25, 1998, the respondent judge modified his order of September 3 to permit the publication of information submitted to the special master as follows:

"This Court, having been informed of a contempt hearing scheduled for September 28, 1998 before the Honorable Nancy Margaret Russo in *JoAnne M. Crow, et al v. Deborah L. Dotson, Executrix*, CV–345899, and, at the request of that Court, hereby modifies its September 3, 1998 journal entry, vol. 2254, pg. 461, to reflect the following:

"Special Master Robert V. Housel may discuss, distribute, or disseminate the contents of all documents submitted to this Court and Special Master Housel pursuant to this Court's orders of July 28, 1998, and which are held under seal, during the aforementioned hearing and subject to the discretion of the Honorable Nancy Margaret Russo. The documents shall be unsealed for the limited purpose of the September 28, 1998 contempt hearing, or such other time should the contempt hearing be continued or rescheduled, and efforts shall be made to maintain confidentiality."

In the prohibition action, on October 9, 1998, this court granted the motion to intervene of Corn, HMSA, Millan, and Goldman and, based upon intervenor-relators' complaint in prohibition, *sua sponte* issued the following alternative writ of prohibition:

"Respondents, Judge Daniel Gaul and appointed special master Robert V. Housel, are hereby prohibited from using, releasing, publishing, disseminating, or distributing in any fashion any information, document, or the contents of any such document which has been provided to them in C.P. Case No. CV–290943 concerning Dr. Robert Corn and/or Highland Musculo–Skeletal Associates until further order of this Court.

"Any and all information concerning Dr. Corn and/or Highland Musculo–Skeletal Associates is confidential and is ordered sealed by respondents and by

those to whom it has been distributed and is to remain sealed pending further order of this Court. Respondents shall advise all persons and entities to whom they have disseminated any such information concerning Dr. Corn and/or Highland Musculo–Skeletal Associates of the Court-ordered sealing of this information. Dissemination, publication or distribution of this information is prohibited without prior approval of this Court.

"Respondents are hereby directed to show cause, in writing, on or before October 19, 1998, why a permanent writ of prohibition should not be issued."

The respondent judge filed a motion to dismiss or, in the alternative, a motion for summary judgment and brief in response to the show cause order. The respondent special master filed a motion to dismiss and joined in the motion to dismiss of his co-respondent. On November 19, 1998, we granted leave to the Cleveland Academy of Trial Attorneys to file an *amicus curiae* brief in support of respondents' motions. For the reasons that follow, we deny respondents' motions and issue a permanent writ of prohibition.

## II. LAW AND DISCUSSION

In order for a writ of prohibition to be issued, the relator must establish that (1) the court or officer against whom the writ is sought is about to exercise judicial or quasijudicial power, (2) the exercise of such power is unauthorized by law, and (3) the refusal of the writ would result in injury for which there exists no adequate remedy in the ordinary course of law. *State ex rel. McKee v. Cooper* (1974), 40 Ohio St.2d 65, 69 O.O.2d 396, 320 N.E.2d 286, paragraph one of the syllabus. The existence of an adequate remedy, however, is immaterial to the issuance of a writ of prohibition if a court is completely without jurisdiction to proceed. *State ex rel. Sanquily v. Lucas Cty. Court of Common Pleas* (1991), 60 Ohio St.3d 78, 573 N.E.2d 606; *State ex rel. Tollis v. Cuyahoga Cty. Court of Appeals* (1988), 40 Ohio St.3d 145, 532 N.E.2d 727.

Respondents contend that because the respondent judge had subject matter jurisdiction of the *Hegedus* lawsuit and personal jurisdiction over the parties in the *Hegedus* case, which is undisputed by relators, he had the authority to do all acts necessary to regulate discovery. As a general rule, unless a lower court unambiguously lacks jurisdiction to proceed, a court having jurisdiction over the subject matter and jurisdiction over the parties has the authority to determine its own jurisdiction, and an adequate remedy at law via appeal exists to challenge any adverse decision. *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 638 N.E.2d 541; see *State ex rel. Miller v. Lake Cty. Court of Common Pleas* (1949), 151 Ohio St. 397, 39 O.O. 232, 86 N.E.2d 464, paragraph three of the syllabus. An exception to this general rule, which permits this court to issue a

writ of prohibition for an interlocutory matter, is when the interlocutory matter involves a usurpation of judicial power. *Rath v. Williamson* (1992), 62 Ohio St.3d 419, 583 N.E.2d 1308; *State ex rel. Dow Chem. Co. v. Court* (1982), 2 Ohio St.3d 119, 2 O.B.R. 668, 443 N.E.2d 143; *State ex rel. Gross v. Marshall* (1974), 39 Ohio St.2d 92, 68 O.O.2d 54, 314 N.E.2d 170, syllabus; see, generally, Annotation, Availability of Mandamus or Prohibition to Compel or to Prevent Discovery Proceedings (1964), 95 A.L.R.2d 1229; Annotation, Availability of Mandamus or Prohibition to Review Order of Reference to Master or Auditor (1961), 76 A.L.R.2d 1120.

## A. Appointment of Special Master

Respondents maintain that the authority to appoint a special master in the underlying lawsuit in this case is derived from Canon 3(C)(4) of the Code of Judicial Conduct, the inherent authority of the court, or Civ.R. 53.

### 1. *Code of Judicial Conduct*

Canon 3 generally provides that a judge shall perform the duties of judicial office impartially and diligently. Canon 3(C) applies this directive to the administrative responsibilities of a judge and, in that context, Canon 3(C)(4) states:

"A judge shall not make unnecessary appointments. A judge shall exercise the power of appointment impartially and on the basis of merit. A judge shall avoid nepotism and favoritism. A judge shall not approve compensation of appointees beyond the fair value of services rendered."

Respondents' reliance on this section or any part of the Code of Judicial Conduct as authority for the power of appointment is misplaced. The Preamble to the Code provides in part as follows:

"The Ohio Code of Judicial Conduct is intended to establish standards for ethical conduct of judges. * * *

"The Canons and divisions are rules of reason. They should be applied consistent with constitutional requirements, statutes, other court rules and decisional law and in the context of all relevant circumstances. The Code is to be construed so as not to impinge on the essential independence of judges in making judicial decisions.

"The Code is designed to provide guidance to judges and candidates for judicial office and to provide a structure for regulating conduct through disciplinary agencies. It is not designed or intended as a basis for civil liability or criminal prosecution. Furthermore, the purpose of the Code would be subverted if the Code were invoked by lawyers for mere tactical advantage in a proceeding.

"The text of the Canons and divisions is intended to govern conduct of judges and to be binding upon them."

■ The Code does not invest judicial powers; rather, as indicated in its Preamble, the Code delineates ethical standards for the conduct of judges. The provision respondents rely upon for the authority to appoint a special master does not grant that authority but merely sets forth the ethical standards that must be followed in the event that such an appointment is made. The Ohio Revised Code specifically provides for the appointment of a special master in certain instances, inapplicable herein, see *infra*, but Canon 3(C)(4) of the Code of Judicial Conduct does not.

## 2. Inherent Authority

■ Respondents contend that the power of appointment of a special master is not derived from any statute but is a part of the inherent authority of the court. Respondents rely on *Hale v. State* (1896), 55 Ohio St. 210, 45 N.E. 199, wherein the Supreme Court of Ohio explained the difference between the jurisdiction of a court and the inherent powers of a court as follows:

"The difference between the jurisdiction of courts and their inherent powers is too important to be overlooked. In constitutional governments their jurisdiction is conferred by the provisions of the constitutions and of statutes enacted in the exercise of legislative authority. That, however, is not true with respect to such powers as are necessary to the orderly and efficient exercise of jurisdiction. Such powers, from both their nature and their ancient exercise, must be regarded as inherent. They do not depend upon express constitutional grant, nor in any sense upon the legislative will. The power to maintain order, to secure the attendance of witnesses to the end that the rights of parties may be ascertained, and to enforce process to the end that effect may be given to judgments, must inhere in every court or the purpose of its creation fails. Without such power no other could be exercised." *Id.* at 213, 45 N.E. at 200.

The issue in *Hale* was whether the General Assembly could abridge the power of a court to punish contempts summarily. The Ohio Supreme Court concluded that because the power to punish contempts was inherent and necessary to the function of the judiciary, the General Assembly could not deprive the court of that authority.

The power defended in the instant case is the power to appoint a special master in a personal injury action to investigate an aspect of Corn's compensation. Respondents argue that according to *Hale*, the trial court had the inherent authority to do all acts, including appointing a special master, to secure the rights of the parties in the lawsuit.

Historically, in equity cases in Ohio, the court of common pleas has had the inherent power to appoint, or make a reference to, a master. *Dillon v. Cleveland* (1927), 117 Ohio St. 258, 268, 158 N.E. 606, 610. "Masters" in chancery cases were used to conduct sales of property, to value leaseholds, to take accounts, to marshal assets and to determine conflicting claims in interpleader actions. See, generally, 80 Jurisprudence 3d (1988) 625, References, Section 4. That same inherent power to make a compulsory reference to a master did not exist, however, in cases at law where the parties had a right to trial by a jury. *Dillon,* 117 Ohio St. at 265, 158 N.E. at 609; *Toulmin v. Becker* (1952), 94 Ohio App. 524, 527, 52 O.O. 304, 305–306, 115 N.E.2d 705, 706–707. In *Johnson v. Wallace* (1836), 7 Ohio 62, Pt. II, 1836 WL 7, in an action of *assumpsit* brought in a court of law, the Supreme Court of Ohio denied a motion for the appointment of an accountant to examine accounts, receive evidence and report findings only. The court held in its syllabus that "[c]ourts of law can not appoint a person to adjust long and disputed items of account, in an action of *assumpsit* without the consent of both parties." The court stated that "[t]his power of reference has been sometimes exercised, but it has been by consent of parties. In the absence of this consent, we are satisfied we have not the authority." *Id.* at 63.

Federal courts, however, permitted the reference of matters in actions at law for tentative findings to simplify or clarify issues for the court. In *Ex Parte Peterson* (1920), 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919, where petitioner challenged the appointment of an auditor who had been given instructions to investigate facts, hear witnesses, examine accounts, report findings, and express an opinion as to disputed items, the United States Supreme Court held that in the absence of any act of Congress to the contrary, the court had the inherent power, in law as in equity, to make a compulsory reference to an auditor to simplify and clarify issues and to make tentative findings. The only Ohio state case citing *Peterson* of which we are aware is *McCann v. Maxwell* (1963), 174 Ohio St. 282, 22 O.O.2d 339, 189 N.E.2d 143, wherein the Supreme Court of Ohio, in an original action in which the parties were not entitled to a jury, relied on *Peterson* to explain the basis for its court rule permitting the appointment of a master commissioner. The court said "[i]t is fundamental that a court has the inherent power to refer original actions in which the parties are not entitled to a trial by jury to Master Commissioners who shall hear the evidence and prepare findings of fact and conclusions of law based thereon." *McCann,* 174 Ohio St. at 283, 22 O.O.2d at 339, 189 N.E.2d at 144. Thus, as jurisprudence developed in Ohio, it is clear that the appointment of a special master was inherent in courts of equity and in actions to which the parties were not entitled to a jury. Having found no prior authority to support respondents' contention that the court of common pleas in a personal injury action has the inherent authority to appoint a special master, we will not newly declare that proposition here, especially in light of the adoption

of the Civil Rules and the enactment of various statutes that do provide for the appointment of a special master in other instances.

The legislature codified the practice of appointing masters in equity cases and also enacted statutes for referrals to referees. See *Newcomb v. Wood* (1878), 97 U.S. 581, 24 L.Ed. 1085; *Dillon,* 117 Ohio St. at 267, 158 N.E. at 609–610; *Gault v. Gault* (1969), 20 Ohio App.2d 57, 49 O.O.2d 81, 251 N.E.2d 866. However, with the adoption of the Ohio Rules of Civil Procedure, which are applicable "in all courts of this state in the exercise of civil jurisdiction at law or in equity," Civ.R. 1(A), unless excepted, many of the statutes concerning master commissioners, special master commissioners, and referees, see R.C. 2315.26 through 2315.36, and 2315.38 through 2315.43, were repealed as being in conflict with the Civil Rules. Thus, any power of appointment of a special master allegedly derived from prior statutes, or allegedly based upon the inherent authority of the courts to enact rules to regulate their proceedings, see *Cassidy v. Glossip* (1967), 12 Ohio St.2d 17, 41 O.O.2d 153, 231 N.E.2d 64; *Higgins v. McDonnell* (1995), 105 Ohio App.3d 199, 663 N.E.2d 970, would now also be in conflict with the Civil Rules. Statutes do remain that are not in conflict with the Civil Rules and that permit the appointment of a special master, see, *e.g.,* R.C. 1702.50 (corporate dissolution); R.C. 2329.35–.36 (execution against property); R.C. 5111.54 (nursing facility); R.C. 5727.57, 5747.451 (taxation); and R.C. 6101.33 (appraisals), but none of these statutes are applicable to this case.

### 3. Civ.R. 53

■ Respondents contend that Civ.R. 53, which governs the appointment of magistrates, expressly authorizes the judicial appointment of a special master. To support this proposition, respondents rely on the language of this court in *Cuyahoga Cty. Bd. of Mental Retardation v. Cuyahoga Cty. Teachers Assn.* (1975), 47 Ohio App.2d 28, 1 O.O.3d 168, 351 N.E.2d 777, wherein this court stated:

"[I]t is quite clear that the use of the word 'may' in Civil Rule 53 gives the trial court the discretion to appoint a referee with or without the consent of the parties. Any argument to the contrary can be quickly discredited by reference to Fed.R.Civ.P. 53, former R.C. 2315.27, and former R.C. 2315,40, each of which is said to have been a basis for Civil Rule 53 and each of which provided for appointment of referees, master commissioners or special master commissioners upon the motion of the court and without the consent of either of the parties." *Id.* at 38, 1 O.O.3d at 174–175, 351 N.E.2d at 785.[2]

---

**2.** The statute allowing the referral of actions to a master commissioner, which was repealed as in conflict with the new Civ.R. 53, provided as follows:

Further, this court stated that "it matters little whether an individual appointed to perform the functions outlined in Civil Rule 53 bears the title referee, master commissioner or mediator. But we do recognize that a person appointed under Civil Rule 53 can be appointed *only* to function in the manner authorized by Civil Rule 53." *Id.* at 39, 1 O.O.3d at 175, 351 N.E.2d at 786. This court held in *Cuyahoga Cty.* that the court of common pleas did not have the authority, either inherently or pursuant to Civ.R. 53, to appoint a mediator in the case before it.

In this case, Civ.R. 53, which now pertains to magistrates, does not authorize the appointment of a special master to perform the function assigned to respondent/special master. Civ.R. 53 permits a court to refer only the following to a magistrate:

"(i) any pretrial or post-judgment motion in any case;

"(ii) the trial of any case that will not be tried to a jury; and

"(iii) upon the unanimous written consent of the parties, the trial of any case that will be tried to a jury." Civ.R. 53(C)(1)(a).

Terminology of title aside, this court previously held that "a person appointed under Civil Rule 53 can be appointed *only* to function in the manner authorized by Civil Rule 53." *Cuyahoga Cty.*, 47 Ohio App.2d at 39, 1 O.O.3d at 175, 351 N.E.2d at 786. The respondent judge's order of reference was for the purpose of determining Corn's compensation as it related to defense medical examinations. The order did not refer any motion to the special master; in fact, the respondent judge held several motions in abeyance at the time he ordered the investigation by the special master. Nor did the judge's order refer the trial of the case to the special master. The issue referred was not a determinative issue in the case itself but was only a collateral component that may or may not have been used by one of the parties to test the credibility of an opposing party's witness. The court, a neutral entity, *sua sponte* appointed an agent to gather information on behalf of one of the parties to the lawsuit at the cost of the opposing parties. No authority exists in Civ.R. 53 for such a court-ordered appointment and investigation.

To clarify the fact that no authority existed pursuant to Civ.R. 53 for the appointment of a special master as in this case, even if such authority were found

---

"Upon motion of a party, the court, or a judge thereof in vacation, may refer an action in which the parties are not entitled to a trial by jury to a regular or special master commissioner to take the testimony in writing, report it to the court, and report therewith his conclusions on the law and facts involved in the issues, which report may be excepted to by the parties and confirmed, modified, or set aside by the court." Former R.C. 2315.40, 1953 H.B. No.1.

to have existed previously, the Staff Note to the Amendment of Civ.R. 53(D) in 1995, when the rule changed the title of referee to magistrate, provided:

"Prior language largely drawn from Federal Civil Rule 53 relative to special masters and largely applicable to situations where special masters were appointed for individual cases and were not court employees is eliminated."

Thus, even if authority existed pursuant to Civ.R. 53 previously, the current rule, and the one in effect at the time of the respondent judge's order of appointment, had eliminated any alleged authority for the appointment of a non-court-employed special master in an individual case. Cf. Fed.R.Civ.P. 53.

Although Civ.R. 53 conveys no authority for the appointment of a special master to conduct an inquiry into the compensation of a party's witness at the cost of the opposing party, the rule specifically preserves any statutory powers of appointment as follows:

"Other orders. Unless prohibited by the order of reference, a magistrate shall continue to be authorized to enter orders when authority is specifically conveyed by statute to magistrates or referees." Civ.R. 53(C)(3)(d).

As discussed above, however, no statutory authority is evident, and none has been relied upon by respondents, for the appointment of a special master as in this case.

In light of the fact that no authority existed for the appointment of a special master in the *Hegedus* case pursuant to Canon 3(C)(4) of the Code of Judicial Conduct, pursuant to the inherent authority of the court of common pleas, or pursuant to Civ.R. 53, the respondent judge exceeded his judicial power by making such appointment.

### B.   Judicial Pretrial Investigation for Impeachment Evidence

■ Even if authority were somehow found to exist for the appointment itself of a special master, that authority was abused when the respondent judge *sua sponte* appointed an agent of the court to determine Corn's compensation relating to defense medical examinations. This information was important only for possible use in impeachment of Corn by the plaintiff at the time of trial. There were no factual disputes regarding Corn's compensation between the parties that needed to be resolved. Corn was not a party to the lawsuit claiming lost wages, for example. Corn was an expert medical witness retained by defendant Johnson. The determination of Corn's compensation regarding defense medicals was for the sole benefit of the plaintiff in the lawsuit for the purpose of impeachment of one of the opposing party's witnesses.

■ The rules governing discovery allow for the parties to conduct discovery. The discovery rules do not provide for any independent investigations by the

court, particularly a discovery investigation by the court to gather information for one of the parties to be used to impeach a witness of the opposing party at the expense of the opposing party whose witness is under investigation. According to the respondent judge's orders, the court was not determining any motion to compel discovery for which sanctions could have been ordered for failure to obey pursuant to Civ.R. 37 or determining any motion for sanctions for failure to obey a subpoena pursuant to Civ.R. 45. Rather, the court appears to have embarked on its own pretrial discovery mission on behalf of one of the parties. Cf. *In re Miller* (1996), 109 Ohio App.3d 455, 672 N.E.2d 675. *Sua sponte* ordering such an investigation constituted an abuse of judicial authority.

## C. Investigation of Non–Party, Non–Witness

Even if authority were somehow found to exist for the appointment of a special master to investigate the compensation of Corn for the plaintiff's use in impeaching Dr. Corn at trial, that authority was clearly exceeded when respondents continued the investigation into Corn's compensation after Dr. Corn was no longer a participant/witness in the *Hegedus* lawsuit.

Defendant Johnson retained Corn as his expert medical witness. On March 31, 1998, however, the respondent judge learned that the plaintiff settled and dismissed his case against defendant Johnson when the respondent judge signed the stipulation of settlement and dismissal with prejudice of the plaintiff's action against defendant Johnson. Corn would no longer be testifying on behalf of Johnson.

Relators argue that any further discovery for the purposes of impeachment of Corn was unwarranted after plaintiff dismissed his case against defendant Johnson. We agree with respondents, however, that the possibility existed that Corn, who had examined the plaintiff, could still be called to testify on behalf of Allstate, the remaining defendant in the *Hegedus* case. There is nothing in the record before us to suggest otherwise until the respondent judge issued the July 28, 1998 orders.

After the respondent judge issued the July 28, 1998 orders, wherein he scheduled a discovery hearing, permitted the special master to inspect Corn's medical appointment book, and issued subpoenas to Corn, Millan, Goldman, and seven insurance companies seeking financial information about Corn and HMSA, Allstate notified the respondent judge in writing, by way of affidavit of counsel, that Corn would not be called as a witness in its case. Thus, as of August 11, 1998, respondents knew that Corn was no longer a participant in the *Hegedus* case. Nevertheless, the judicial orders remained and the pursuit of information concerning Corn continued.

Upon filing for relief in prohibition, this court issued an alternative writ on August 21, 1998 to prohibit any further action with respect to the March 5, 1998 and July 28, 1998 orders. On September 3, 1998, the respondent judge cancelled the discovery hearing and, in response to a specific request for emergency relief by Corn after learning that financial information provided to the special master had been disseminated,[3] issued an order protecting the produced and distributed material regarding Corn's finances.

One of the purposes of an alternative writ of prohibition is to preserve the existing status of a proceeding. *State ex rel. Hughes v. Brown* (1972), 31 Ohio St.2d 41, 43, 60 O.O.2d 23, 24, 285 N.E.2d 376, 377. Notwithstanding the August 21, 1998 alternative writ issued by this court, which prohibited respondents from enforcing or proceeding in any way under the March 5, 1998 or July 28, 1998 orders until further order of this court, on September 28, 1998, the respondent judge modified his order of September 3, 1998 to permit the respondent special master, in a different court proceeding between different parties, to discuss, distribute or disseminate the contents of all of the documents submitted pursuant to the July 28, 1998 order, thereby disturbing the *status quo* of the underlying action. Although disclosure had occurred, and although this court believed the August 21, 1998 alternative writ of prohibition should have prevented the conduct of respondents, this court *sua sponte* issued a second alternative writ of prohibition after learning of respondents' actions.

Again assuming there is authority for the court to appoint a special master to investigate on behalf of one of the parties to a lawsuit as a part of pretrial discovery, even that authority would not be carte blanche. The boundary in this case would be the use of that authority to pursue an investigation of an individual whom the court knew was no longer a participant in any fashion in the case before it. The pursuit of Corn's financial information when Corn was no longer a witness in the case before the respondent judge is an abuse of judicial power for which the shield of "discovery regulation" will not protect against the issuance of a writ of prohibition. Any authority the court may have possessed initially did not extend to excesses of that authority. In these rare circumstances, a writ of prohibition may issue. *State ex rel. Lambdin v. Brenton* (1970), 21 Ohio St.2d 21, 50 O.O.2d 44, 254 N.E.2d 681; see, generally, *State ex rel. Gross v. Marshall*

---

3. See *State ex rel. WHIO–TV–7 v. Lowe* (1997), 77 Ohio St.3d 350, 673 N.E.2d 1360 (criminal discovery is not subject to R.C. 149.43 disclosure); *Conley v. Clark Equip. Co.* (1986), Franklin App. No. 84AP–966, unreported, at 4, 1986 WL 3222 (a party has no absolute right to disseminate information obtained in discovery); see, generally, Annotation, Propriety and Extent of State Court Protective Order Restricting Party's Right to Disclose Discovered Information to Others Engaged in Similar Litigation (1991), 83 A.L.R.4th 987; Annotation, Protective Orders Limiting Dissemination of Financial Information Obtained by Deposition or Discovery in State Civil Actions (1986), 43 A.L.R.4th 121.

(1974), 39 Ohio St.2d 92, 68 O.O.2d 54, 314 N.E.2d 170, syllabus; see, also, *State ex rel. Stark v. Summit Cty. Court of Common Pleas* (1987), 31 Ohio St.3d 324, 31 OBR 599, 511 N.E.2d 115 (writ of prohibition issued for extraordinary circumstances). Respondents have cited no authority that permits a court not only to investigate the finances of an individual whom the court knows has no further involvement in the matter pending before it but also to distribute to others any of the financial information collected.[4]

Respondents argue that it was permissible in the *Hegedus* case to pursue this impeachment information from Corn, who was no longer involved in the *Hegedus* case, because Corn could reappear as a witness in future cases; therefore, the issue of Corn's bias or pecuniary interest was not moot because the issue could resurface. This effort by respondents to justify their continued probe of Corn in the *Hegedus* action is not persuasive. The doctrine relied upon by respondents developed as an exception to the general rule that a court will not address issues that are moot. See *Miner v. Witt* (1910), 82 Ohio St. 237, 92 N.E. 21. The exception permits a court to address an otherwise moot issue if that issue is capable of repetition yet evading review. *State ex rel. Beacon Journal Publishing Co. v. Donaldson* (1992), 63 Ohio St.3d 173, 586 N.E.2d 101. An issue "is capable of repetition where 'there * * * [is] a reasonable expectation that the same complaining party * * * [will] be subjected to the same action again. * * * '" *Id.* at 175, 586 N.E.2d at 103, quoting *Weinstein v. Bradford* (1975), 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350, 353. Unlike the case of a newspaper seeking access to court proceedings in *Beacon*, there is no reasonable expectation that plaintiff, Michael Hegedus, will be in need of impeachment evidence against Corn in any future case. Thus, the "capable of repetition yet evading review" exception is inapplicable to respondents' position.

### D. Remedy Via Appeal

Respondents contend that a writ of prohibition should not issue because relators have an adequate remedy by way of appeal to challenge the respondent judge's orders. See *Ellison v. Burnside* (1992), 79 Ohio App.3d 542, 607 N.E.2d 891. Whether or not Dr. Corn, as a nonparty witness in March 1998, or as a nonparty/non-witness in July and September 1998, could have instituted an immediate appeal, see, *e.g.*, *Wozniak v. Kombrink* (1991), Hamilton App. No. C–89053, unreported, 1991 WL 17213, or whether Allstate or Corn could have instituted a new interlocutory appeal pursuant to R.C. 2505.02 effective July 22, 1998, see *State ex rel. Herdman v. Watson* (1998), 83 Ohio St.3d 537, 700 N.E.2d 1270, is

---

4. To the contrary, in fact, the respondent special master has supported his show-cause motion to dismiss in this action with his affidavit wherein he further discloses financial information concerning HMSA and Corn.

immaterial since we believe that respondents acted patently in excess of their authority. The availability or adequacy of a remedy of appeal is therefore irrelevant. See *State ex rel. Sanquily v. Lucas Cty. Court of Common Pleas* (1991), 60 Ohio St.3d 78, 573 N.E.2d 606; *State ex rel. Stark v. Summit Cty. Court of Common Pleas*, 31 Ohio St.3d 324, 31 OBR 599, 511 N.E.2d 115; *State ex rel. Lambdin v. Brenton*, 21 Ohio St.2d 21, 50 O.O.2d 44, 254 N.E.2d 681.

## III. CONCLUSION

This court, having found no authority for the acts of respondents, hereby issues a writ of prohibition as follows:

In the case of *Hegedus v. Johnson*, Cuyahoga County Court of Common Pleas case No. 290943, the appointment of Special Master Housel is void. Respondents Judge Daniel Gaul and Robert V. Housel are prohibited from conducting any investigation into the compensation of Dr. Robert Corn. Without delay, all material produced pursuant to the March 5, 1998 and/or July 28, 1998 subject orders, and copies of such produced material and/or notes concerning such material, shall be immediately sealed and returned to Corn.

The Clerk of Court shall seal Exhibit A to respondent Housel's motion to dismiss or, in the alternative, motion for the scheduling of a guidelines hearing and Exhibit 12 to relators Corn, HMSA, Millan, and Goldman's brief in opposition to respondents' motion to dismiss or, in the alternative, for summary judgment pursuant to Entry No. 4312 dated May 13, 1999.

Writ granted. Costs to respondents.

*Writ granted.*

O'DONNELL and TIMOTHY E. MCMONAGLE, JJ., concur.