JOURNAL ENTRY AND OPINION
This is the fifth time this matter has been before this court. It involves an unorthodox and persistent series of proceedings against a former expert witness after the parties to the underlying litigation voluntarily settled their claims. The matter has generated more review and extraordinary actions within the original jurisdiction of this court than any in recent memory.
Actions within the original jurisdiction of this court are rare, comprising, in all forms, fewer than ten percent of all cases filed. Actions seeking the extraordinary writ of prohibition are themselves a comparatively rare form of original action. Unlike appeals to review and correct error in proceedings, such actions concern basic jurisdiction to act and such writs are not routinely issued, even to prevent anticipated erroneous judgments. Not only are requests for such writs rare, but they are not frequently granted because of the stringent requirements governing their issuance.
This matter can be put into perspective by recognizing that not only were three extraordinary writs of prohibition requested, but all three were granted. We have been compelled to invoke our sparingly exercised original jurisdiction and revisit this matter to countermand trial court orders with such frequency that such extraordinary writs have become ordinary. The appeal in the case at bar by the former expert witness, Robert Corn, M.D., and his professional corporation involves recurring claims that the trial court indiscriminately exceeded its jurisdiction, abused its contempt powers and the adversary process, and improperly interfered with their attorney-client relationship.
The only Ohio case with a similar history and persistent refusal to put a matter to rest is State ex rel. Celebrezze, Jr. v. Ohio Fifth District Court of Appeals (1983), 5 Ohio St.3d 1, which involved almost nine years of mandamus actions and appeals from an order requiring Canton to fluoridate its municipal water supply. Although the matter at bar pales in comparison, the IBM antitrust litigation provides perhaps the classic example of a similar trial court refusal to conclude the litigation. In Re IBM Corp. (2nd Cir. 1982), 687 F.2d 591 (granting writ of mandamus directing the trial judge to accept settlement by the parties and terminate litigation); In Re IBM Corp. (1995), 45 F.3d 641 (granting a writ of mandamus ordering the trial judge to recuse himself from further proceedings).
This court has previously noted that the role of the [trial] court is to resolve the parties' disputes in a fair and equitable manner at a difficult time in their lives rather than embroiling them in further litigation. Oatey v. Oatey (1992), 83 Ohio App.3d 251, 262. These cases stand as stark testament to the principle that judicial resources would be better employed if trial courts limit themselves to resolving the parties' claims within the traditional bounds of the adversary system. We believe, as the Supreme Court recognized in Celebrezze, supra, that enough is enough already. With any luck, this appeal will conclude this matter.
The background facts, briefly summarized, are as follows: Appellants Dr. Corn and his professional corporation, Highland Musculo-Skeletal Assoc., Inc., perform medical services, including independent medical examinations to evaluate medical claims and injuries. This matter has arisen from two cases in which trial courts have ordered discovery of their federal income tax documents, patient records, and other financial information, ostensibly for purposes of cross-examination during litigation. Proceedings continued despite the fact that the underlying litigation was settled. Each of the cited cases can be consulted for further details.
This court issued the first writ of prohibition in a case in which a trial judge took the unprecedented step of appointing a special master to conduct the investigation. State ex rel. Allstate Ins. Co. v. Gaul (1999), 131 Ohio App.3d 419. This court held that neither the trial court nor the special master, Robert Housel, had jurisdiction to investigate appellants. This court specifically ordered that the material obtained by the special master be sealed and returned to Dr. Corn. Id. at 438.
The second writ action arose after the special master was ordered to testify in a subsequent tort case concerning a similar discovery dispute. State ex rel. Corn v. Russo (1999), 133 Ohio App.3d 57 (Russo I). This court granted a writ of prohibition to prohibit the special master and the trial judges in both cases from disclosing any information the special master obtained during his unlawful appointment. This court specifically ordered that the transcript of the special master's testimony at the September 28, 1998 contempt hearing be sealed. Id. at 65. Unbeknownst to this court when issuing this opinion, the parties had already voluntarily settled the underlying tort action.
The third writ action arose after the parties filed a notice of voluntary dismissal with the trial judge, who refused to file it with the clerk and terminate the litigation after their settlement. State ex rel. Corn v. Russo (Nov. 24, 1999), Cuyahoga App. No. 76730, unreported (Russo II). This court granted a third writ of prohibition finding that the trial court lacked jurisdiction to conduct any further proceedings, including the contempt hearing. Cf. In Re IBM Corp. (2nd Cir. 1982),687 F.2d 591. During the course of this action, this court again sealed the transcript of the special master's testimony at the September 28, 1998 contempt hearing.[1]
In the appeal at bar, filed before the third writ action had been filed or decided, appellants argue the trial court improperly compelled them to execute Internal Revenue Service (IRS) tax information release forms, improperly unsealed the transcript of the special master's testimony at the September 28, 1998 contempt hearing, and improperly ordered their former counsel to testify in violation of their attorney-client privilege. No appellee's brief has been filed.[2]
 I
Appellants' first assignment of error follows:
 THE TRIAL COURT ERRED IN COMPELLING A NON-PARTY, EXPERT WITNESS TO EXECUTE INTERNAL REVENUE SERVICE FORMS RELEASING TAX RETURNS AND RETURN INFORMATION IN VIOLATION OF 26 U.S.C. § 6103.
This assignment is overruled as moot.
Appellants challenge the trial court's mandate, announced during the September 28, 1998 hearing, to complete IRS release forms that requested disclosure of tax returns and 1099 forms for a four-year period. Appellants argue the trial court's order violates a federal confidentiality statute, which provides generally that the IRS may not disclose federal tax return information except to taxpayers or their designees, or to state taxing authorities and federal agencies under limited circumstances. 26 U.S.C. § 6103. Because the court is not a taxing authority, appellants argue the court improperly compelled the disclosure, so the completed forms should be returned.
A review of the record and applicable federal regulations implementing the statute reveals that these arguments are moot.26 C.F.R. 301.6103(c)-1(a)(4) provides in pertinent part as follows:
 The disclosure of a return or return information authorized by a request for or consent to the disclosure shall not be made unless the request or consent is received by the [Internal Revenue] Service within 60 days following the date upon which the request or consent was signed and dated by the taxpayer. (Emphasis added.)
Because more than 60 days have elapsed since appellants completed the forms on September 28, 1998, applicable regulations state that disclosure of the information sought shall not be made. Because of the lapse of time, the documents are no longer effective to constitute a valid request for information.
We decline appellants' request to issue a blanket statement that state trial courts are categorically prohibited from ordering disclosure of IRS tax return information. Although there is a public policy that disfavors disclosure of tax return information, in appropriate cases courts may order taxpayers to produce information they possess or to complete information request forms when the information is relevant to the litigation. See 6 Moore's Federal Practice, Sections 24.41[3][b] and 26.52[6][a].
Caselaw recognizes, however, that the standard of relevance for discovery from persons who are not parties to the litigation is more rigorous than when such information is sought from parties. E.g., Katz v. Batavia Marine Boating Supplies, Inc. (Fed. Cir. 1993), 984 F.3d 422. We share appellants' concern that the trial court did not adequately consider these principles before compelling them to complete the request forms in the case at bar and have disapproved of the court's independent investigatory practices in our prior cases. Under the circumstances, because the documents are no longer effective to constitute a valid request for information under federal regulations, however, no further relief is necessary.
Accordingly, appellants' first assignment of error is overruled as moot.
 II
Appellants' second assignment of error follows:
 THE TRIAL COURT ERRED IN ISSUING AN ORDER UNSEALING THE ENTIRE TRANSCRIPT OF THE SEPTEMBER 28, 1998 HEARING, INCLUDING THAT PORTION OF THE TRANSCRIPT WHICH WAS SEALED BY THIS COURT OF APPEALS' JOURNAL ENTRY AND OPINIONS IN CASE NOS. 75349 AND 75048.
This assignment is overruled.
Appellants argue that the trial court improperly unsealed the transcript of testimony given by special master Robert Housel in the September 28, 1998 contempt hearing. They request this court vacate the trial court's June 11, 1999 order unsealing this testimony. Under the circumstances, however, the record shows this argument has become moot because this court already resealed the Housel testimony in the third writ action. Moreover, even if the argument were not moot, appellants have failed to show any resulting prejudice.
As noted above, this court has held that Housel never should have been appointed special master, never should have collected any financial or other information concerning appellants in that capacity, and never should have testified concerning this matter. The sealing and unsealing of these materials has plagued this matter ever since. In the first writ action, this court specifically ordered that the material obtained by the special master be sealed and returned to Dr. Corn. State ex rel. Allstate Ins. Co. v. Gaul, 131 Ohio App.3d at 438.
The special master was subsequently ordered to testify at a September 28, 1998 contempt hearing in a separate tort action before a different judge. Appellants challenged this order in the second writ action after the testimony had already occurred. On October 13, 1998, the trial court ordered a copy of the transcript and entered an order sealing the record as follows:
 COURT SEALS ANY AND ALL DOCUMENTS RELATED TO THE SHOW CAUSE HEARING OF 9/28/98 AND ORDERS THE COURT REPORTER TO SEAL THE ORIGINAL TRANSCRIPT AND TO REFUSE ANY REQUEST FOR TRANSCRIPT WITHOUT PRIOR ORDER OF THIS COURT.
On June 4, 1999, this court issued its opinion in the second writ action, which found inter alia that the trial court had jurisdiction over the contempt proceedings, and concluded as follows:
 The transcript of the testimony of respondent Housel, as taken at the contempt hearing of September 28, 1998, is ordered sealed.
State ex rel. Corn v. Russo, 133 Ohio App.3d at 65.
On June 11, 1999, the trial court reinstated the contempt matter to its active docket, however, and entered, inter alia, the following order:
 PURSUANT TO THE RULING BY THE COURT OF APPEALS, THE COURT VACATES ITS ORDER SEALING THE TRANSCRIPTS IN THIS MATTER AS CONTAINED ON THE DOCKET ON 10/13/99 [SIC].
The parties thereafter voluntarily settled and dismissed their underlying tort claims on or about July 2, 1999.
Five days thereafter, the trial court clarified its order unsealing the transcripts, stating as follows:
 COURT CLARIFIES ITS ORDER TO STATE THAT THE CT VACATES ITS PRIOR RULING SEALING THE TRANSCRIPTS OF THE HEARING HELD 9-28-98, EXCEPT THAT THE TRANSCRIPT OF TESTIMONY OFFERED BY ROBERT HOUSEL IS TO REMAIN SEALED.
Appellants thereafter filed the third writ action. On July 23, 1999, the day the third writ action was filed, this court had to enter an order to obtain a copy of the transcript and again ordered that the transcript be sealed as follows:
 MOTION BY RELATORS TO FILE PARTIAL TRANSCRIPT UNDER SEAL IS GRANTED. IT IS FURTHER ORDERED THAT THE TRANSCRIPT OF THE TESTIMONY OF ROBERT V. HOUSEL AS TAKEN AT THE SHOW CAUSE HEARING OF SEPTEMBER 28, 1998, IN CASE NO. CV-345899, SHALL REMAIN UNDER SEAL AS DIRECTED IN THIS COURT'S JUNE 4, 1999, PERMANENT WRIT OF PROHIBITION ISSUED IN STATE EX REL. ROBERT CORN, M.D., ET AL. V. THE HONORABLE NANCY RUSSO, ET AL., CASE NO. 75349 [(1999), 133 Ohio App.3d 57]. ANY CITATIONS, QUOTATIONS, OR OTHER REFERENCES TO THE SEALED TRANSCRIPT IN ANY PLEADING, MOTION, BRIEF OR OTHER FILING WITH THE COURT, IN THE COURSE OF THIS LITIGATION, ARE ALSO SEALED BY THIS ORDER.
See State ex rel. Corn v. Russo, Cuyahoga App. No. 76730, Motion No. 08585 (July 23, 1999).
In response to this entry, the trial court entered the following order:
 PURSUANT TO THE ORDER OF THE COURT OF APPEALS DATED 7-23-99, THIS COURT HAS PROVIDED COURT REPORTER SCOTT WALLACE WITH A COPY OF THE ORDER ISSUED REGARDING THE SEALING OF HOUSEL'S TESTIMONY. THIS COURT HAS DETERMINED THAT THE ONLY PERSON REQUESTING ANY COPY OF THE TRANSCRIPT OF THE HEARING ON 6-28-98 [SIC] WAS JOSEPH MELNIK, OF DR. CORN'S COUNSEL'S FIRM. NO OTHER REQUESTS HAVE BEEN MADE SINCE THE ORIGINAL SEALING.
Finally, this court's merit opinion in the third writ, which found the trial court lacked any further jurisdiction after the parties dismissed the underlying tort claims, again sealed the record as follows:
 In the case of Crow v. Dotson, Cuyahoga County Court of Common Pleas Case No. CV-345899, respondent, Judge Nancy Russo, is hereby prohibited from conducting any further proceedings, including the contempt hearing against Dr. Corn. Documents previously ordered sealed in Corn v. Russo I [(1999), 133 Ohio App.3d 57] and Allstate v. Gaul [(1999), 131 Ohio App.3d 419] shall remain under seal in those cases. Documents submitted under seal in this case shall be resealed and remain under seal absent an order from this court.
Id. at p. 8.
Because this court has already resealed the Housel testimony after the trial court's June 11, 1999 order unsealing it, any claim of error is moot. Even if appellants' claim were not moot, however, the record fails to show any resulting prejudice. Appellants do not argue they suffered any prejudice and the record shows that the unsealed transcript of Housel's testimony was not disseminated to anyone other than appellants' counsel before it was subsequently resealed. If appellants seek any further redress, this court previously instructed them it would entertain an appropriate motion in State ex rel. Corn v. Russo, Cuyahoga App. No. 75349. See State ex rel. Corn v. Russo (Nov. 24, 1999), Cuyahoga App. No. 76730, unreported at p. 5.[3]
Accordingly, appellants' second assignment of error is overruled.
 III
Appellants' third assignment of error follows:
 THE TRIAL COURT ERRED IN ORDERING APPELLANTS HIGHLAND MUSCULO-SKELETAL ASSOCIATES, INC. AND ROBERT S. CORN, M.D.'S FORMER ATTORNEY, DOUGLAS DIPALMA OF CAVITCH FAMILO, DURKIN AND FRUTKIN, TO TESTIFY IN VIOLATION OF THE ATTORNEY-CLIENT PRIVILEGE OF OHIO REVISED CODE SECTION 2317.02.
This assignment is overruled.
Appellants argue that the trial court improperly subpoenaed their former attorney Douglas DiPalma to testify at a continuation of the contempt hearing scheduled for October 13, 1998. Attorney DiPalma represented the appellants in the case at bar until September 29, 1998, the day after the contempt hearing commenced, when he and his law firm were disqualified by the trial court. DiPalma was disqualified because he was subpoenaed by the court to testify as a witness and produce documents at the continued contempt hearing. Appellants do not specifically challenge the disqualification in this appeal, but argue that the testimony and documents sought by the subpoena fell within the attorney-client privilege.
As with the other assignments of error, appellants' challenge to the subpoena appears to be moot because the October 13, 1998, continuation of the contempt hearing never occurred. Proceedings in the third writ action prevented compliance with the order to appear on that date. Because more than two years have elapsed since that date, it is no longer possible to comply with the subpoena as issued.
In any event, appellants have failed to show reversible error under the circumstances. Objections to the scope of material requested by a subpoena should be raised by a motion to quash the subpoena. Civ.R. 45(B). The proceedings on such a motion provide a basis to review any order concerning the scope of disclosure. Without any such motion asserting the attorney-client privilege, without any proceeding by trial court order adjudicating such claim, and with no testimony by counsel on the record, we have no basis to find that the trial court violated appellants' attorney-client privilege.
R.C. 2317.02(A) specifically prohibits attorneys from testifying concerning privileged communications made to them by their clients absent waiver. Applying these principles in particular cases can be an involved process to determine whether the privilege applies and whether it was properly asserted and not waived. See e.g., State v. McDermott (1995),72 Ohio St.3d 570 (the final in a series of three appeals arising from one criminal case).
Appellants cite a prior appeal in McDermott, which held that the trial court erred by ordering an attorney to testify. State v. McDermott (1991), 73 Ohio App.3d 689, 693. This case is distinguishable from the case at bar, however, precisely because the record in McDermottwas much more developed than in the case at bar. The trial court in McDermott held a hearing to determine whether to compel the attorney to testify, journalized a specific order concerning the scope of the attorney's proposed testimony, and held a subsequent contempt hearing against the attorney who refused to testify. Id.
The case at bar contains no such proceedings, the record shows that attorney DiPalma was not called to testify, the hearing for which he was subpoenaed never took place, and no copy of the subpoena to him even appears in the record. While we agree that McDermott properly states the law and would not hesitate to apply its principles, we will do so only if the trial court compels privileged testimony. Appellants have not cited any authority that attorneys are exempt from subpoenas generally or from the need to properly litigate privilege claims in a particular case.
Accordingly, appellants' third assignment of error is overruled.
It is ordered that appellee(s) recover of appellant(s) their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JOHN T. PATTON, J., CONCURS; LEO M. SPELLACY, J., CONCURS IN JUDGMENT ONLY.
[1] This matter was before the court a fourth time in Guerrieri v. Allstate Ins. Co. (Sept. 2, 1999), Cuyahoga App. Nos. 73869, 73870, 75132 and 75133, unreported. In Guerrieri an insurer argued on direct appeal in an unrelated tort case that the first trial judge exhibited a pattern of bias by its ruling challenged in the first writ action and by excluding expert testimony of another Highland Musculo-Skeletal Assoc. physician. Id. at pp. 3-9.
[2] An appeal from this third writ action is currently pending in the Ohio Supreme Court. We have jurisdiction over the orders challenged in this appeal, because it is separate from the pending writ appeal and because there is nothing left for the trial court to do as a result of our holding that it lacked further jurisdiction in the third writ action. Under the circumstances, even if the trial court had further jurisdiction, the challenged orders are final appealable orders denying provisional remedies. R.C. 2505.02(B)(4).
[3] We have been reluctant to address an issue that has repeatedly been raised in the writ actions: that is, whether the trial court violated an order of this court through misconduct or mere legal error. On each occasion this court stated that the panel of this court that issued the order would entertain an appropriate motion to consider the matter. Because the third writ action has been appealed to the Supreme Court, this court and the panel that issued that opinion lack jurisdiction to address whether the trial court violated that writ and is in contempt for entering orders after this court stated it had no further jurisdiction whatsoever.