SEMINATORE, Appellant,

v.

CLIMACO, CLIMACO, SEMINATORE, LEFKOWITZ AND
GAROFOLI, Gen. Partnership, et al., Appellees.

[Cite as Seminatore v. Climaco, Climaco, Seminatore, Lefkowitz & Garofoli,
Gen. Partnership, 148 Ohio App.3d 613, 2002-Ohio-3892.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 78931.

Decided Aug. 1, 2002.

Bieser, Greer & Landis, L.L.P., David C. Greer and Nikki J. Palmer, for appellant.

Reminger & Reminger Co., L.P.A., Nicholas D. Satullo and Laura M. Sullivan, for appellees.

TERRENCE O'DONNELL, Judge.

{¶ 1}   Kenneth F. Seminatore appeals from a judgment of the common pleas court that adopted the final report of a court-appointed Special Master in connection with the winding up of the general partnership of Climaco, Climaco, Seminatore, Lefkowitz & Garofoli in accordance with R.C. 1775.36.

{¶ 2}   On appeal, Seminatore raises four assignments of error, charging in two of them that the court abused its discretion in adopting findings of the Special Master regarding partnership assets and liabilities and regarding no breach of fiduciary duty, claiming that these findings were against the manifest weight of the evidence.   In the other two assignments of error, he argues that the court abused its discretion in awarding sanctions against him and in dismissing his fraud claim.

{¶ 3}   After a thorough review of the record before us, we have concluded that the Special Master's report is supported by competent, credible evidence, and we therefore reject the first and second assignments of error.   Further, because Seminatore has failed to present us with either a transcript of proceedings or an App.R. 9 statement of the contempt hearing on his fraud claim, we are unable to conduct meaningful review of the third and fourth assignments of error, and we therefore summarily overrule them.

{¶ 4}   The record before us reveals that, in 1976, several attorneys, including Seminatore, formed the General Partnership of Climaco, Climaco, Seminatore, Lefkowitz & Garofoli, from which they practiced law.   Thereafter, the General Partnership leased office space in the Leader Building in downtown Cleveland.

{¶ 5}   In 1982, the members of the General Partnership formed a legal professional association, Climaco, Climaco, Seminatore, Lefkowitz and Garofoli, L.P.A. (hereinafter "the Firm"), but because they already had a lease in the name of the General Partnership, the Firm subleased the office space from the General Partnership.   In 1986, when the Firm moved to the Halle Office Building, it continued to use the General Partnership as a "pass through" entity, i.e., the General Partnership leased the office space, and the Firm then subleased the

space from the partnership. The General Partnership's assets were limited to furniture, artwork, and equipment purchased to furnish the Firm's office.

{¶ 6} On April 17, 1997, the Firm terminated Seminatore, and as a result, he sued the firm in common pleas court case No. 352977, where the court entered a directed verdict in favor of the Firm on his claims for wrongful termination, promissory estoppel, and breach of fiduciary duty. On appeal, however, in App. No. 76658, we reversed in part, remanding his promissory estoppel and breach of fiduciary duty claims. On further appeal, the Supreme Court denied the parties' discretionary cross-appeals. See *Seminatore v. Climaco, Climaco, Lefkowitz & Garofoli Co., L.P.A.* (2001), 91 Ohio St.3d 1513, 746 N.E.2d 615.

{¶ 7} At the time of his termination from the Firm, Seminatore owned a 12.75 percent interest in the General Partnership. On November 15, 1999, he filed a complaint in common pleas court for dissolution and an accounting of the General Partnership, and a fraud claim under R.C. 1777.99, naming the partnership and the individual partners as defendants. During the course of proceedings, one of the partners, Michael Climaco, sought affirmative relief from the remaining partners and requested the court order them to purchase his share in the General Partnership.

{¶ 8} On April 7, 2000, the General Partnership filed a motion for sanctions against Seminatore, asserting that his claim under R.C. 1777.99 constituted frivolous conduct because that statute had been repealed in 1996. On May 18, 2000, the court conducted a hearing on the motion for sanctions; however, our record does not contain a transcript or App.R. 9 statement of that hearing. Thereafter, the court imposed sanctions against Seminatore in the amount of $1,732.50.

{¶ 9} On September 6, 2000, the court dismissed Seminatore's fraud claim, ordered the dissolution of the General Partnership, and referred the winding-up of the partnership to a Special Master. The Special Master met with the parties and reviewed depositions, pleading, briefs, exhibits and the court file, and conducted a physical inspection of the leased space in the Halle Building.

{¶ 10} On November 7, 2000, the Special Master issued a final report, finding, inter alia, that the General Partnership was only a "pass through" entity, with no source of revenue other than funds it received from the Firm; that it had been the lessee of office space in the Halle Building in downtown Cleveland, and that lease constituted a liability because the rental amount exceeded market value; and that the only assets of the partnership consisted of furniture, equipment, and artwork. The Special Master determined that the liability of the lease exceeded the estimated value of the partnership assets, and, therefore, he recommended that Seminatore and Michael Climaco be discharged from any liabilities of the partnership but that they be found to have no claim to any partnership assets.

{¶ 11}   Two days later, on November 9, 2000, the trial court adopted the final report of the Special Master.   On November 21, 2000, Seminatore filed a motion to vacate the court's order adopting the Special Master's report, arguing he had 14 days to file objections.

{¶ 12}   On December 5, 2000, Seminatore filed this appeal, raising four assignments of error for our review.   The first two state:

{¶ 13}   "The trial court abused its discretion when it adopted the findings of the court–appointed Special Master regarding partnership assets and liabilities which findings were not supported by the manifest weight of the evidence.

{¶ 14}   "The trial court abused its discretion when it adopted the finding by the court–appointed Special Master of no breach of fiduciary duty which was not supported by the manifest weight of the evidence."

{¶ 15}   Seminatore argues that the Special Master's report is against the manifest weight of the evidence and that the court erred in adopting this report without allowing him 14 days to file objections in accordance with Civ.R. 53 procedures.   Seminatore alleges "clear documentary and testimonial evidence" before the Special Master established that the General Partnership had valuable assets and no liabilities.

{¶ 16}   The General Partnership, on the other hand, asserts that it was only a "pass through" entity, with no source of revenue, and that its lease was a major liability that exceeded any assets.   It further asserts that we should presume regularity because Seminatore failed to produce a record of the proceedings before the Special Master.

{¶ 17}   Based on our review of that record, we are unable to conclude that the Special Master's report is against the manifest weight of the evidence.   It is well established that judgments supported by some competent, credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence.   See C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.   Here, the limited record supports the Special Master's conclusion that the General Partnership did not breach any fiduciary duty and that the General Partnership's lease constituted a significant liability which exceeded its assets.

{¶ 18}   In particular, both parties relied on a "Trial Depreciation Report" prepared by Ernst & Young in 1994, which analyzed the partnership assets and liabilities when another partner, Thomas Colaluca, left the Firm. In this report, Ernst & Young found the fair market value of improvements made to the leasehold "to be zero" because of their fixed nature, which made them the lessor's property under the terms of the lease.   It further found the estimated value of

the General Partnership's furniture and equipment to be $65,358; naturally, this figure would have depreciated since then.

{¶ 19} On the other hand, using the lease-analysis table appended to the Ernst & Young report, commencing on April 1997, and through the life of the lease, the date of Seminatore's termination, the General Partnership will be liable for a $1,132,679 overpayment on the fair market value of the lease at the Halle Building. As noted by the General Partnership, because of the Firm's downsizing, much of this space is unused, and cheaper, more practical office space is readily available. Therefore, based on the exhibits before the Special Master, his finding that the partnership's liabilities exceeded its assets is supported by the manifest weight of the evidence.

{¶ 20} Given the state of the record, and without any contrary evidence to rebut the contents of the documentation reviewed by the Special Master, we are constrained to conclude the Special Master's findings are supported by competent, credible evidence.

■ {¶ 21} With respect to Seminatore's procedural contention that the court denied him the opportunity to object to the Special Master's report in accordance with Civ.R. 53, there are two reasons why this challenge must fail: First, the procedures set forth in Civ.R. 53, as amended in 1995, no longer expressly apply to noncourt-employed special masters, see, e.g., *State ex rel. Head of Claims, Allstate Ins. Co. v. Gaul* (1999), 131 Ohio App.3d 419, 722 N.E.2d 616, citing the Staff Note to the amendment of Civ.R. 53(D) in 1995 ("Prior language largely drawn from Federal Civil Rule 53 relative to special masters and largely applicable to situations where special masters were appointed for individual cases and were not court employees is eliminated."); second, even assuming arguendo that this rule applies by analogy, Seminatore cannot prevail because, pursuant to Civ.R. 53(E)(4)(c), he had an obligation to actually file objections even after the court adopted the Special Master's report, and he failed to do so. Accordingly, he has waived the opportunity to present this argument on appeal.

{¶ 22} Civ.R. 53(E)(3)(b) provides:

{¶ 23} "(b) * * * A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."

{¶ 24} Although Civ.R. 53(E)(3)(a) provides a party 14 days to file objections, Civ.R. 53(E)(4)(c) states:

{¶ 25} "(c) Permanent and interim orders. The court may adopt a magistrate's decision and enter judgment without waiting for timely objections by the parties, but the filing of timely written objections shall operate as an automatic stay of execution of that judgment until the court disposes of those objections and

vacates, modifies, or adheres to the judgment previously entered." As we stated in *Riolo v. Navin* (Apr. 4, 2002), Cuyahoga App. No. 79809, 2002-Ohio-1551, at ¶ 22, 2002 WL 502408:

{¶ 26} "Here, although the magistrate's report and the trial court's order adopting it had been filed on the same day, Civ.R. 53(E)(4)(c) afforded Navin fourteen days to file objections and effect the automatic stay provision of that rule. He failed to do so and, therefore, pursuant Civ.R. 53(E)(3)(b), he has waived the right to file an appeal from that judgment. Accord *Thompson v. Thompson* (Aug. 10, 2001), Portage App. No. 2000-P-0110, unreported [2001 WL 901252]; *Huffman v. Huffman* (July 13, 2001), Trumbull App. No. 2000-T-0095, unreported [2001 WL 799882]; *Simms v. Simms* (Mar. 27, 1998), Portage App. No. 97-P-0005, unreported [1998 WL 156886]."

{¶ 27} We agree with the dissent's view that Civ.R. 53 does not apply to this case; however, it is Seminatore who relies solely on this rule to support his contention that the court erred in not affording him an opportunity to object to the Special Master's report; moreover, neither Seminatore nor the dissent have been able to point to any other legal authority to support the proposition that a trial court must provide the party with a reasonable period of time to file objections to a special master's report.

{¶ 28} Thus, because of the absence of any authority to the contrary, Seminatore's only tenable argument is that Civ.R. 53 applies by analogy, and that he had 14 days to file objections. However, he never did so, and Civ.R. 53(E)(4)(c) clearly contemplates the court's adoption of a magistrate's ruling without waiting for objections and does not relieve a party from the duty to file those objections if the court prematurely adopts the magistrate's report. *Riolo*, supra. Here, Seminatore never filed objections to the Special Master's report, and even if he had the right to do so by analogy to Civ.R. 53, this failure constitutes waiver of his right to appeal from that issue.

{¶ 29} Accordingly, these assignments of error are overruled.

{¶ 30} Seminatore's third and fourth assignments state:

{¶ 31} "The trial court abused its discretion in awarding sanctions against Mr. Seminatore.

{¶ 32} "The trial court abused its discretion in dismissing Mr. Seminatore's fraud claim."

{¶ 33} We are unable to review Seminatore's third and fourth assignments of error due to a lack of record. Here, he claims that the trial court erred in dismissing his fraud claim and imposing sanctions after conducting a hearing on these matters. Patently, however, he failed to produce the transcript of this

hearing as part of the record on appeal, nor has he presented an App.R. 9 statement.

{¶ 34} "[I]n the absence of a record, the proceedings at trial are presumed correct." *State v. Brown* (1988), 38 Ohio St.3d 305, 314, 528 N.E.2d 523, fn. 4.

{¶ 35} As the court stated in *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 400 N.E.2d 384:

{¶ 36} "The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record. * * * When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm."

{¶ 37} Further, "[i]f a transcript is 'unavailable' an appellant has an obligation to provide a complete record pursuant to App.R. 9(C), (D) or (E)." *State v. Nero* (Feb. 21, 2002), Cuyahoga App. No. 79866, 2002-Ohio-656, at ¶ 20, 2002 WL 337729, quoting *State v. Newell* (Dec. 6, 1990), Cuyahoga App. Nos. 56801 and 60128, 1990 WL 193357.

{¶ 38} Based on Seminatore's failure to provide a transcript or an App.R. 9 statement of these proceedings, we must presume regularity and summarily reject the third and fourth assignments of error.

Judgment affirmed.

ANN DYKE, J., concurs.

DIANE KARPINSKI, A.J., dissents in part.

KARPINSKI, Administrative Judge, dissenting in part.

{¶ 39} With regard to appellant's Assignments of Error III and IV, relating to the court granting appellees' motion for sanctions against him, I concur with the majority's decision to overrule these claimed errors because of appellant's failure to provide this court with either a transcript from the sanctions hearing or any of the other items specified in App.R. 9.[1]

---

1. The parties in this case expressly waived any hearing on the merits before the Special Master. Because they agreed to submit their case on briefs, there was no hearing to transcribe and the only record required by App.R. 9 is the written documents the parties submitted to the Special Master. Everything the parties submitted and everything the special master reviewed in making his report is in this court's file.

{¶ 40} . On Assignments I and II, however, I dissent. The majority ignores what, to my mind, is a glaring procedural error committed by the trial court and which, left unremedied by this court, strips appellant, Kenneth F. Seminatore, of his right to object to the Special Master's report and thus of his right to a judicial determination of whether the Special Master committed any errors in this case.

{¶ 41} The first and only pertinent question in this appeal is whether appellant should have been permitted an opportunity to file his objections and have them reviewed by the trial court. For the reasons set forth below, this question must be answered in the affirmative. Because the trial court did not provide appellant an opportunity to make meaningful objections to the Special Master's report, I would reverse the judgment of the trial court.

{¶ 42} Between 1976 and 1999, appellant and appellees were partners in CCSL&G, a general partnership. On November 15, 1999, pursuant to Ohio's Partnership Act, as codified in R.C. 1775.01 et seq., appellant filed a complaint for dissolution of the general partnership. In his complaint, appellant demanded an accounting of CCSL&G's assets and liabilities and made a fraud claim under R.C. 1777.99, which was repealed on July 1, 1996.

{¶ 43} Despite the fact that the criminal tax statute embodied in R.C. 1777.99 had been repealed, appellant filed a motion for summary judgment on that claim. Appellees opposed the motion and simultaneously filed a motion for sanctions, in which they argued that appellant should be sanctioned, pursuant to R.C. 2323.51, for filing a claim that no longer existed under Ohio law. The trial court denied appellant's motion for summary judgment and granted appellees' motion for sanctions. Following a sanctions hearing, the court granted sanctions against appellant in the amount of $1,732.50, dismissed appellant's claim for fraud, ordered dissolution of the partnership, including an accounting pursuant to R.C. 1775.21, and appointed a noncourt employee, Patrick D'Angelo, as a special master to wind up the affairs of the partnership.

{¶ 44} Instead of a hearing, the parties, by agreement, submitted evidence to the Special Master regarding the wind-up of the partnership's affairs. In their respective briefs, the parties provided evidence relating to the valuation of the partnership's assets. On November 7, 2000, the Special Master filed his final report, in which appellant was to be discharged from any partnership liabilities and was found to have no claim to any of the partnership assets. *Two days later,* the trial court adopted the findings of the Special Master's report and dismissed the entire case. On November 21, 2000, appellant filed a "Motion For Court to Vacate Order Adopting The Final Report Of The Special Master." In that motion, appellant argued that because the trial court did not wait the fourteen-day period specified in Civ.R. 53(E)(3)(a) before it adopted the Special Master's report, he was effectively robbed of his ability to file substantive objections to

that report. In that same motion, appellant also requested an extension of time within which to file objections to the report. The court denied appellant's motion as moot. On December 5, 2000, this appeal was filed.

{¶ 45} In his complaint, appellant requested judicial dissolution of the partnership and an accounting of its assets. Judicial dissolution of a partnership is a special proceeding. R.C. 2505.02; *Celebrezze v. Netzley* (1990), 51 Ohio St.3d 89, 554 N.E.2d 1292, citing *Tilberry v. Body* (1986), 24 Ohio St.3d 117, 24 OBR 308, 493 N.E.2d 954. This request seeks relief in equity and is governed by R.C. 1775.01 et seq. As required by R.C. 1775.21, once the trial court entered its decree of judicial dissolution of the partnership, the court ordered an accounting of the partnership assets. For this purpose the court appointed D'Angelo as Special Master to conduct the accounting and wind up the partnership's affairs.

{¶ 46} The trial court and the parties maintain that they conformed their conduct according to Civ.R. 53, which states as follows:

{¶ 47} "(A) Appointment

{¶ 48} "A court of record may appoint one or more *magistrates* who shall be attorneys at law admitted to practice in Ohio. A magistrate appointed under this rule may also serve as a magistrate under Crim.R. 19 or as a traffic magistrate." (Emphasis added.)

{¶ 49} This rule neither specifically mentions special masters nor authorizes the type of special master appointed in this case. Civ.R. 53 applies solely to magistrates.

{¶ 50} In a previous decision in *Allstate Ins. Co. v. Gaul* (1999), 131 Ohio App.3d 419, 722 N.E.2d 616, this court explained that, following the 1995 amendments to Civ.R. 53, "the current rule * * * eliminated any alleged authority for the appointment of a non-court-employed special master in an individual case." *Allstate* at 434, 722 N.E.2d 616. The *Allstate* case relied upon the Staff Note to the 1995 amendment to Civ.R. 53(D):

{¶ 51} "Prior language largely drawn from Federal Civil Rule 53 relative to special masters and largely applicable to situations where special masters were appointed for individual cases and were not court employees is eliminated. * * * "

{¶ 52} The Staff Note makes it clear that any case referred by a trial court under the rule must be to a "magistrate," that is, "a public civil officer."

{¶ 53} D'Angelo, so far as I can tell from the record, is an attorney in private practice. He is not a court employee or public civil officer and, therefore, by definition, he cannot be a magistrate as defined by Civ.R. 53. Civ.R. 53, therefore, does not apply to either the proceedings D'Angelo conducted or the

final report he prepared, because he is not a magistrate. The majority, however, claims Seminatore waived this issue on appeal because he did not comply with Civ.R. 53(E)(4)(c). This rule applies only to "a magistrate's decision." Since D'Angelo is not a "magistrate," the rule cannot impose any requirement on Seminatore.

{¶ 54} The next question is whether Civ.R. 53 should exclusively govern appointment of a person to monitor the wind-up of a partnership's affairs and whether a trial court may refer the winding up of a partnership's affairs to a non-judicial person. Judicial dissolution of a partnership is a "special statutory proceeding." Civ.R. 1(C) provides:

{¶ 55} "These rules, to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure * * * (7) in all other special statutory proceedings * * *."

{¶ 56} As stated in *Price v. Westinghouse Elec. Corp.* (1982), 70 Ohio St.2d 131, 133, 24 O.O.3d 237, 435 N.E.2d 1114:

{¶ 57} " '[T]he civil rules should be held to be clearly inapplicable only when their use will alter the basic statutory purpose for which the specific procedure was originally provided in the special statutory action.' " Id., quoting *State ex rel. Millington v. Weir* (1978), 60 Ohio App.2d 348, 349, 14 O.O.3d 310, 397 N.E.2d 770.

{¶ 58} The question, then, is whether the rule alters the basic statutory purpose embodied in R.C. Chapter 1775, which governs the dissolution and winding up of partnerships. At the outset, it must be noted that part of the purpose of the statute is to allow parties, that is, partners and partnerships, to obtain prompt, orderly, and accurate determinations relating to dissolution and the winding up of the partnership's affairs. This legislative goal with regard to dissolution and winding up, however, would be thwarted if Civ.R. 53 were the exclusive means by which a settlement of the partnership's accounts could be accomplished.

{¶ 59} Requiring only court-employed magistrates to deal with the settlement and final accounting of partnership accounts would burden the already over-crowded dockets of these civil officers. It is not clear, moreover, that the winding-up process even requires judicial powers. What is needed is more akin to accounting experience. I believe there would be little argument by litigants that the winding-up process should be conducted by someone with special expertise in such matters. I do not believe, therefore, that Civ.R. 53 is the exclusive means at the court's disposal in the specific matter of settling the final accounts of a partnership.

{¶ 60}  In some special proceedings, particularly a judicial dissolution of a corporation or other type of association, the appointment of a master commissioner is expressly authorized.  E.g., R.C. 1702.50 (corporate dissolution); R.C. 1729.61 (association dissolution).[2]  Unlike other sections of R.C. Title 17, the section governing partnerships, however, does not expressly permit appointment of a master commissioner, although R.C. 1775.36 states that partners "may obtain winding up by the court."

{¶ 61}  R.C. 1702.50 was revised and became effective on April 10, 2001 and R.C. 1729.61 on August 5, 1998.  The revision of both code sections went into effect after the changes in Civ.R. 53 became effective on July 1, 1998.  The section on winding up a partnership, however, has not been revised since 1953.  The nature of the proceeding that was referred here—that is, a winding up—is a process synonymous with the process of an accounting of or settling of the partnership accounts.  Moreover, it is also an action in equity.  13 Ohio Jurisprudence 3d (1995), Business Relationships, Section 1241.  I can see no reason to distinguish between the winding up of a partnership and the same process for a corporation or association dissolution.

{¶ 62}  It has been well established:

{¶ 63}  "Where a petition for an accounting is one in which relief can be afforded only by a court of equity, the plaintiff is not entitled to a trial by jury and the court has the power to send the case to a referee."  1 Ohio Jurisprudence 3d (1998), Accounts and Accounting, Sections 38 and 41, citing *Kinkopf v. Scherer* (1932), 11 Ohio Law Abs. 422, 1932 WL 2310.

{¶ 64}  Even if there is no express statutory authority to appoint a nonemployee master in the particular instance of a partnership's winding up, a court in equity deciding a case as a special statutory proceeding in which the parties are not entitled to a trial by jury still retains its inherent power to refer a special proceeding to a special master.  See *Cassidy v. Glossip* (1967), 12 Ohio St.2d 17, 41 O.O.2d 153, 231 N.E.2d 64.  Such a person "shall hear the evidence and prepare findings of fact and conclusions of law * * *." *McCann v. Maxwell* (1963), 174 Ohio St. 282, 283, 22 O.O.2d 339, 189 N.E.2d 143.[3]

---

2.  *Allstate,* supra, expressly acknowledged that the appointment of a special master under these two statutes and certain others is valid.

3.  In *Allstate,* supra, this court denied the sua sponte appointment of an agent in a personal injury case to gather information on behalf of one of the parties at the cost of the opposing parties.  Reversing that appointment, this court distinguished between those facts and those in *McCann,* supra, in which a court in equity referred to a Master Commissioner an action in which the parties were not entitled to a trial by jury.

{¶ 65} Accordingly, because the dissolution and winding up of a partnership's affairs are matters in equity and the fundamental work that needs to be done is more akin to an audit or an accounting, I conclude that a trial court may refer such matters to special masters, and that special masters do not fall under Civ.R. 53; they are nonjudicial persons, not magistrates.[4] *McConnell v. Hunt Sports Enters.* (1999), 132 Ohio App.3d 657, 725 N.E.2d 1193 (liquidating trustee appointed to wind up partnership affairs); see, also, R.C. 2311.04; *Allstate,* at 431, 722 N.E.2d 616, citing *Dillon v. Cleveland* (1927), 117 Ohio St. 258, 268, 158 N.E. 606; see *Nowak v. Nowak* (May 4, 1977), Belmont App. No. 1199, unreported, 1977 Ohio App. LEXIS 10233; 80 Ohio Jurisprudence 3d (1988) 625, References, Section 4.

{¶ 66} The central dispute in the case at bar is appellant's missed opportunity to object to the Special Master's report. Because Civ.R. 53 does not control the proceedings below, the trial court cannot be held to the procedure the rule provides for appellant's objections to that report.

{¶ 67} There is no provision in R.C. Chapter 1775 as to when objections should be filed to a final accounting of a partnership's affairs. Absent such authority, one cannot simply borrow the "14 days" specified in Civ.R. 53 and arbitrarily impose it on litigants who want to file objections. There is clear legal authority, however, for the proposition that parties are entitled not only to file objections to a special master's final report, but also to receive a full review of any objections made, along with a decision from the trial court that affirmatively and finally determines the rights of the parties. *McCann v. Maxwell* (1963), 174 Ohio St. 282, 284, 22 O.O.2d 339, 189 N.E.2d 143. See, also, *Crane v. Cheek* (1970), 27 Ohio App.2d 27, 56 O.O.2d 208, 272 N.E.2d 159 (advisory jury verdict, based upon issues of fact presented to them, is not conclusive or binding upon the court whose duty it is to determine finally the issues tried by the jury, their verdict being merely evidence).

{¶ 68} There is no authority allowing a trial court to simply "adopt" the final accounting report of a special master without first providing the parties with a reasonable period of time, following the filing of the report, within which to file objections, if any.[5] See *Burckhardt v. Burckhardt* (1885), 42 Ohio St. 474, 1885

---

4. At this juncture, it should be noted that persons appointed by trial courts to wind up the affairs of corporations or partnerships have been called by many names: "special masters," "referees," "liquidating trustees," "master commissioners," and "special master commissioners." To achieve a uniform nomenclature in making such appointments, it is preferable that the term "magistrate" be reserved for the type of person specified in Civ.R. 53, that is, a court employee.

5. I refrain from suggesting a specific period of time that would be "reasonable," but do note that a trial court's adoption of a final report, as in this case, without allowing for the filing or consideration of any possible objections is patently unreasonable.

WL 42. Then, if objections are submitted, the trial court must review and determine the validity of the report as it would any evidence in light of any objections made. The trial court may not delegate its duty to "decide" the case to a special master, especially because the special master is not a court employee and invested with no judicial power.[6] *McCann,* supra; *Burckhardt,* supra; *Lavelle v. Pickett* (June 13, 1985), Cuyahoga App. Nos. 48978, 48982 and 49010, 1985 WL 6847; See 1 American Jurisprudence 2d (1964), Accounts and Accounting, Section 63.

{¶ 69} The record here, scant as it is, indicates that appellant filed a motion to vacate the court's order adopting the Special Master's report and simultaneously requested an opportunity to file objections. The request for additional time to file substantive objections is, itself, a clear indication that appellant objected to the Special Master's report. I, therefore, disagree with the majority's conclusion that appellant failed to object and thus waived that issue here on appeal. The trial court erred in adopting the Special Master's final report before the parties, especially appellant, had an opportunity to submit objections to the findings set forth in that report. Accordingly, I would sustain appellant's Assignments of Error I and II.

---

6. A special master, unlike a magistrate, does not take an oath. Magistrates, on the other hand, are invested with executive or judicial power. Black's Law Dictionary (5th Ed. 1989), at 857.