OPINION
{¶ 1} Appellant Catalina Hurtado appeals from the February 25, 2002, decision of the Stark County Court of Common Pleas, Juvenile Division, modifying the parties' Shared Parenting Plan.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Xavier Lemon was born on December 27, 1991, in Ohio to appellant Catalina Hurtado and appellee Michael Lemon. Although the parties have never been married, they were residing together at the time of Xavier's birth and also separately relocated to California within two years of the same. While paternity was established in California in 1993, no custody orders were ever filed.
 {¶ 3} In 1998, appellee returned to Ohio. Shortly thereafter, Xavier also returned to Ohio to live with appellee. Subsequently, appellee, on February 2, 2000, filed a complaint seeking custody of Xavier in the Stark County Court of Common Pleas, Juvenile Court Division. As memorialized in a Shared Parenting Plan that was filed with the trial court on April 18, 2000, the parties agreed that appellant, who resided in California, would be Xavier's residential parent and that appellee would have companionship with Xavier at Christmas, Easter and for eight weeks during the summer. The Shared Parenting Plan further provided that "[n]either of the parties is to make demand on the other for support because each understands and agrees that they are able to maintain the child while the child resides in the home of each." The Shared Parenting Plan was adopted as the order of the court via a Judgment Entry filed on April 18, 2000. Xavier then returned to California to live with appellant in June or July of 2000.
 {¶ 4} On June 11, 2001, appellee filed a Motion to Modify Shared Parenting Plan, asking the trial court to modify the Shared Parenting Plan by designating appellee, rather than appellant, the residential parent and to modify companionship on the basis that there "has been a substantial change of circumstances." Appellee, in the affidavit attached to such motion, specifically alleged as follows:
 {¶ 5} "Since the execution of the Shared Parenting Plan, the Respondent, Catalina Hurtado, has failed and refused to live up to her obligations as set forth in the Plan. Specifically:
 {¶ 6} "Catalina Hurtado has failed and refused to permit Xavier to return my telephone calls.
 {¶ 7} "She denied me Easter week visitation as provided for in the Shared Parenting Plan.
 {¶ 8} "Her telephone was disconnected for a period of time, and I had no way to communicate with my son.
 {¶ 9} "She moved to a new address but she and Xavier "stay" with an unmarried man at different address many days of the week.
 {¶ 10} "Catalina did not disclose to me that she was pregnant when the Shared Parenting Plan was signed, although she told me she was living with an unnamed man, who has since moved out. I do not know if this man was the father of the new child.
 {¶ 11} "Xavier Michael Lemon spends the majority of his time outside of school at a "boys' club" because his mother has failed and refused to care for him.
 {¶ 12} "I believe that Xavier's well-being is in jeopardy if he continues to reside with his mother and I believe I can provide a much more stable home life for him.
 {¶ 13} "Further, Xavier has expressed to me his desire to return to Ohio."
 {¶ 14} At a hearing on appellee's Motion to Modify Shared Parenting Plan held on July 19, 2001, appellee requested a continuance in order to secure legal counsel. Pursuant to a Magistrate's Order filed on July 20, 2001, the Magistrate scheduled a pretrial for October 17, 2001. At such pretrial, which appellant attended by telephone, a half day hearing was scheduled for January 17, 2002.
 {¶ 15} Thereafter, an evidentiary hearing on appellee's Motion to Modify Shared Parenting Plan was held before the Magistrate on January 17, 2002. While appellee appeared with counsel, appellant, when questioned by the trial court, responded that she was representing herself. As memorialized in a Magistrate's Decision filed on February 25, 2002, the Magistrate recommended that the Shared Parenting Plan be modified to transfer the residential parent status from appellant to appellee. The Magistrate's Decision was approved and adopted by the trial court on February 22, 2002, three days prior to filing.
 {¶ 16} It is from the trial court's February 25, 2002, Decision that appellant now appeals, raising the following assignments of error:
 {¶ 17} "I. THE TRIAL COURT ERRED IN NOT APPOINTING LEGAL COUNSEL FOR THE MOTHER.
 {¶ 18} "II. THE TRIAL COURT ABUSED ITS DISCRETION, AND COMMITTED PLAIN ERROR IN MODIFYING THE SHARED PARENTING DECREE.
 {¶ 19} "III. IT WAS PLAIN ERROR FOR THE TRIAL COURT TO AFFIRM THE MAGISTRATE'S DECISION WITHOUT PROVIDING APPROPRIATE AND CONCISE `NOTICE' TO THE PARTIES REGARDING THE RAMIFICATIONS OF FILING WRITTEN OBJECTIONS."
 I {¶ 20} Appellant, in her first assignment of error, argues that the trial court erred in failing to appoint counsel to represent appellant at either the preliminary hearing or at the January 17, 2002, evidentiary hearing. As is stated above, appellant, at the January 17, 2002, hearing in this matter, indicated to the trial court that she was representing herself. During her opening statement, appellant apologized to the court for not having a lawyer, stating, in part, as follows:
 {¶ 21} "I just first wanted to let you know that I apologize for not having a lawyer, I have tried, I have exhausted all methods of trying to get a lawyer, it just is not financially possible for me at this time. I applied for Legal Aid in Canton and did not fulfill the requirements, I make too much money, I make $42,000.00 a year, I don't know what that means in Canton, Ohio, but where I live that's pretty average, that's enough for me to sustain life for myself and my children, but not enough for me to get a lawyer and pay air fare and car fare and hotel fare to come here and I apologize in advance for my lack of sophistication and I don't know how to address the Court, but I will give you my best." Transcript at 9-10.
 {¶ 22} Juv.R. 4(A) states as follows: "Every party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding. When the complaint alleges that a child is an abused child, the court must appoint an attorney to represent the interests of the child. This rule shall not be construed to provide for a right to appointed counsel in cases in which that right is not otherwise provided for by constitution or statute." The last sentence in Juv. R. 4(A) was added in 1994.
 {¶ 23} However, Ohio provides a statutory right to appointed counsel in juvenile proceedings that goes beyond constitutional requirements. State ex rel. Asberry v. Payne, 82 Ohio St.3d 44, 46,1998-Ohio-596, 693 N.E.2d 794. Specifically, R.C. 2151.352, the statutory equivalent to Juv R 4(A), provides, in relevant part, as follows: "A child or the child's parents, custodian, or other person in loco parentis of such child is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152. of the Revised Code and if, as an indigent person, any such person is unable to employ counsel, to have counsel provided for the person pursuant to Chapter 120. of the Revised Code. If a party appears without counsel, the court shall ascertain whether the party knows of the party's right to counsel and of the party's right to be provided with counsel if the party is an indigent person. The court may continue the case to enable a party to obtain counsel or to be represented by the county public defender or the joint county public defender and shall provide counsel upon request pursuant to Chapter 120. of the Revised Code."
 {¶ 24} In Asberry, supra., a grandmother cared for and supported her grandchild for years after the biological mother lost custody. After the child's father was awarded custody in a parentage proceeding of which the grandmother did not receive notice, the grandmother filed a pro se petition in the juvenile court seeking custody of the child. While the grandmother requested the appointment of counsel due to her indigency, the trial court denied the grandmother's request and subsequently designated the child's father as the child's legal guardian and residential parent. The grandmother then petitioned for a writ of mandamus to compel the trial court to appoint counsel. The Ohio Supreme Court, in Asberry, specifically held that under the plain language of R.C. 2151.352, indigent parents and other persons in loco parentis, among others, are entitled to appointed counsel in all juvenile proceedings, including custody and visitation issues. Id. at 48. Since the grandmother was both indigent and in loco parentis, the Ohio Supreme Court, inAsberry, granted a writ of mandamus to compel the trial court to appoint counsel for the grandmother in her custody proceeding.[1] The court, in so holding, noted that "Asberry's right to appointed counsel emanates from R.C. 2151.352, and the amendment to Juv. R. 4(A) does not abrogate that right." Id. at 48. Thus, pursuant to Asberry, appellant would have been entitled to the appointment of counsel to represent her provided that she was indigent.
 {¶ 25} However, we find that the trial court's failure to inquire as to appellant's ability to secure legal counsel and failure to appoint counsel to represent her constituted harmless error. At the trial in this matter, appellant, during her opening statement, stated, in part, as follows: "I applied for Legal Aid in Canton and did not fulfill the requirements, I make too much money, I make $42,000.00 a year." Transcript at 10. Thus, by her own admission to the trial court, appellant was not indigent, and, therefore, would not have been entitled to appointed counsel.
 {¶ 26} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 27} Appellant, in her second assignment of error, contends that the trial court abused its discretion and committed plain error in modifying the parties' Shared Parenting Plan by naming appellee as the residential parent. We disagree.
 {¶ 28} As is stated above, the Magistrate, in a decision filed on February 25, 2002, recommended that the parties' Shared Parenting Plan be modified to designate appellee, rather than appellant, the residential parent. The decision contained the following language: "NOTICE: A party, may pursuant to Civil Rule 53, file written objections within 14 days of the filing of the Magistrate's Decision." Appellant, however, never filed objections to the Magistrate's Decision.
 {¶ 29} Civ.R. 53(E)(3)(a) provides that a party may, if it so desires, file objections to a magistrate's decision within fourteen days of the filing of the decision. Further, Civ.R. 53(E)(3)(b) provides that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." See, e.g., Stamatakis v.Robinson (January 27, 1997), Stark App. No. 1996CA00303, Kademenos v.Mercedes-Benz of North America, Inc. (March 3, 1999), Stark App. No. 98CA50. We note that authority exists in Ohio law for the proposition that appellant's failure to object to the magistrate's decision does not bar appellate review of "plain error." See R.G. Real Estate Holding,Inc. v. Wagner (April 24, 1998), Montgomery App. No. 16737; TimbercreekVillage Apts. v. Myles (May 28, 1999), Montgomery App. No. 17422. See also Tormaschy v. Weiss (July 6, 2000), Richland App. No. 00CA01. The doctrine of plain error is limited to exceptionally rare cases in which the error, left unobjected to at the trial court, "rises to the level of challenging the legitimacy of the underlying judicial process itself." See Goldfuss v. Davidson, 79 Ohio St.3d 116, 122, 1997-Ohio-401,679 N.E.2d 1099.
 {¶ 30} Appellant, in the case sub judice, specifically asserts that it was plain error for the trial court to affirm the Magistrate's Decision when "it was clear, from the face of the document itself, the Magistrate did not apply the correct statutory burden upon the moving party." According to appellant, the trial court, in order to modify the Shared Parenting Plan, was required to abide by R.C. 3109.04(E)(1)(a) rather than R.C. 3109.04(E)(2)(b).
 {¶ 31} Upon review of the record, we find no indication of plain error in the instant case. Assuming, arguendo, the trial court did err by applying R.C. 3109.04(E)(1)(a) rather than R.C. 3109.04(E)(1)(b), we find any error to be harmless since, under either of the above statutes, the trial court did not abuse its discretion[2] in modifying the Shared Parenting Plan by designating appellee the residential parent.
 {¶ 32} R.C. 3109.04(E)(1)(a) states, in part, as follows:
 {¶ 33} "(E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 {¶ 34} "(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 {¶ 35} "(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 {¶ 36} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 37} In turn, R.C. 3109.04(2)(b) provides as follows:
 {¶ 38} "(2) In addition to a modification authorized under division (E)(1) of this section:
 {¶ 39} "(b) The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children."
 {¶ 40} Pursuant to R.C. 3109.04(F)(1), "[i]n determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 {¶ 41} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 42} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 43} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 44} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 45} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 46} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 47} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 48} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 49} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 50} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 51} With respect to R.C. 3109.04(E)(1)(a), there was evidence before the Magistrate that there was a change in circumstances subsequent to the inception of the parties' Shared Parenting Plan. As noted by the Magistrate in his Decision, evidence was adduced at the January 17, 2002, hearing that appellant, on two occasions, denied appellee court ordered companionship with Xavier. During the hearing, appellee testified that in April of 2001, he flew out with his family to California to visit Xavier for Easter. The following is an excerpt from appellee's testimony:
 {¶ 52} "Q. She [appellant] knew in advance, we called her on the cellphone, we had given her the cellphone number and when we got there he was not there, nobody there, so we even called her folks prior to en route and she knew we would be there, we gave her the estimated time that we'd be there, between 7:00 and 8:00. So after we get to Alameda we went to a restaurant real close because we didn't want to keep trying, we just came 2000 miles. So after that we seen that day, we went to San Francisco and we stayed in a hotel in San Francisco but we called every day.
 {¶ 53} "Q. Did you have a cellphone?
 {¶ 54} "A. Yes.
 {¶ 55} "Q. Okay, was it the same cellphone that you have now?
 {¶ 56} "A. Yes.
 {¶ 57} "Q. And the number is?
 {¶ 58} "A. 330-284-6629.
 {¶ 59} "Q. All right, did Miss Hurtado have that number?
 {¶ 60} "A. Yes, she did.
 {¶ 61} "Q. Had she called you on that cellphone prior to that time?
 {¶ 62} "A. Yes. They called me on the cellphone more than they do my home phone number. I don't even think they know the home phone number." Transcript at 64. Although he called appellant's home four to six times a day in an attempt to see Xavier, appellee never got to see Xavier during such time. As is stated above, appellee, pursuant to the parties' Shared Parenting Plan, was also to have Xavier for eight weeks during the summer. However, when he arrived in California during the summer of 2001 for visitation with Xavier, appellee learned that appellant had filed a custody motion with Alameda County [California] Superior Court, which had issued an order staying summer companionship. After appellee retained counsel in California, appellant's action in California was dismissed and Xavier came to Ohio and visited with appellee from August 6th to August 30th. Thus, appellee had less than four weeks of visitation with Xavier during such summer. According to the Guardian Ad Litem, "[o]n both of those occasions he [Xavier] expressed disappointment that he had this visitation planned with his father, but for a reason that's not fully explained to him, . . . he didn't get to see his father." Transcript at 30.
 {¶ 63} The Magistrate, in his decision, further found that modification of the Shared Parenting Plan was in Xavier's best interest and that the harm caused by any change of environment was outweighed by the advantages of the change to Xavier. Based on the two incidents during which appellant denied appellee visitation with Xavier, the Magistrate, in his Decision, opined that appellee would be more likely "to honor and facilitate companionship with the other parent . . ." Furthermore, at the January 17, 2002, hearing in this matter, testimony was adduced that appellant commutes twenty minutes each day by bus to her job at a bank in San Francisco, where she is employed Monday through Friday from 8:00 a.m. to 5:00 p.m. When Xavier finishes school at approximately 2:50 a.m., he walks over to the Alameda Boys and Girls Club for after school care. The Guardian Ad Litem in this case, who spoke with the executive director of the Boys and Girls Club, testified that she was concerned about the amount of time that Xavier spent at the Club every day because "it's just a long day, it's gonna be a long day for any kid to go from before school until you know, 6:00, 6:15 and on Scouting days, he doesn't get home until his mom picks him up at 8:00 o'clock, 8:15, 8:30, . . ." Transcript at 26. The Guardian Ad Litem further voiced concerns that, because Xavier spent so much time at the Boy and Girls Club, he was around teenagers and was influenced by them.[3]
 {¶ 64} In contrast, testimony was adduced at the January 17, 2002, hearing that appellant and his wife have more flexible schedules, leaving them more time to spend with Xavier. At the hearing, appellant testified that he works from 8:30 a.m. until 4:30 p.m., that he works seven minutes away from Xavier's proposed school, and that he can either go into work late or leave work early "if my children, something happens to them,. ." Transcript at 53. Appellant further testified that his wife works from 7:00 a.m. to 3:00 p.m. and is generally home close to 4:00 p.m. The Guardian Ad Litem, based on the foregoing, indicated that Xavier would "have a little more time with a parent if he lived in Ohio and a little more parental commitment." Transcript at 36. The Guardian Ad Litem, who met with Xavier on two occasions, further testified "Xavier will probably be fine no matter where he's at." Transcript at 31.
 {¶ 65} In short, we find that, applying either R.C. 3109.04(E)(1)(a) or R.C. 3109.04(E))(2)(b), there was evidence supporting the Magistrate's decision recommending that the Shared Parenting Plan be modified to designate appellee the residential parent. The trial court, therefore, did not commit plain error in modifying the parties' Shared Parenting Plan.
 {¶ 66} Appellant's second assignment of error is, therefore overruled.
 III {¶ 67} Appellant, in her third assignment of error, argues that the trial court erred in affirming the Magistrate's Decision "without providing appropriate and concise `notice' to the parties regarding the ramifications of filing written objections." We disagree.
 {¶ 68} As is stated above, the Magistrate's Decision, which was filed on February 25, 2002, contained the following language below the Magistrate's signature: "NOTICE: A party, may pursuant to Civil Rule 53, file written objections within 14 days of the filing of the Magistrate's Decision." The trial court judge signed the Magistrate's Decision, approving and adopting the same, on February 22, 2002, three days before the decision was filed. Appellant now contends that, because the trial court judge signed and approved the Magistrate's Decision before it was even filed, "she assumed it was moot to file any objections to the Magistrate's Decision." According to appellant, "[n]owhere within this notice is the reader advised that a failure to file written objections is almost tantamount to a waiver of the participant's right to appellate review."
 {¶ 69} We find, however, that the trial court did not err in affirming the Magistrate's Decision. The notice contained in the Magistrate's Decision clearly advised appellant of her right to file objections to the same within 14 days pursuant to Civ.R. 53. Furthermore, at the hearing held on January 17, 2002, the Magistrate stated, in part, on the record:
 {¶ 70} "BY THE MAGISTRATE: If these exhibits are admitted into evidence by rule they become part of the Court record, the official part of the Court record which means that in the event that either party were to file an objection to whatever Magistrate's decision I would file, a hearing would then be held before Judge James who is assigned to this case and upon hearing those objections, Judge James would then be given an opportunity to review whatever exhibits there are, so obviously they would need to be kept on the court premises —
 {¶ 71} "BY MS. HURTADO: Okay.
 {¶ 72} "BY THE MAGISTRATE: Beyond Judge James' decision or ruling on the objections, either party would have an opportunity to file an appeal with the Court of Appeals . . ."
{¶ 73} Transcript at 103-104. We concur with appellee that the fact that the trial court judge signed the Magistrate's Decision two days before the same was filed did not prevent appellant from filing any objections pursuant to Civ.R. 53. See Seminatore v. Climaco, Climaco,Seminatore, 148 Ohio App.3d 613, 2002-Ohio-3892, 774 N.E.2d 1233.[4]
 {¶ 74} Appellant's third assignment of error is, therefore, overruled.
 {¶ 75} Accordingly, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
By Edwards, J., Gwin, P.J. and Wise, J. concur.
Topic: Shared Parenting Plan — Abuse of Discretion
[1] R.C. 2151.23(F)(1) states that "the juvenile court shall exercise its jurisdiction in child custody matters in accordance with sections3109.04, 3109.21 to 3109.36, and 5103.20 to 5103.28 of the Revised Code." Appellee, during oral arguments, cited to this section for the proposition that the custody proceeding in this matter is not a juvenile proceeding, but rather is a proceeding under Revised Code Chapter 3109. Appellee further contends that, for such reason, appellant was not entitled to the appointment of counsel. However, we note that the version of R.C.2151.23(F)(1) that is now in effect was in effect when the Ohio Supreme Court decided Asberry.
[2] As appellant notes in her brief, an abuse of discretion standard applies to custody issues. See Holcomb v. Holcomb (1989), 44 Ohio St.3d 128,541 N.E.2d 597. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore vBlakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
[3] We note that after the parties entered into the Shared Parenting Plan in April of 2000, Xavier moved from Ohio to California to live with his mother. Thus, we concur with appellee that "all of the findings of the Magistrate regarding commuting times, pre-school and post school care and flexibility of schedules constitutes new evidence that was presented and developed since the execution of the Shared Parenting Plan."
[4] In Seminatore, the court cited Riolo v. Navin (April 4, 2002), Cuyahoga App. No. 79809, 2002-Ohio-1551, at 22 in holding that "although the magistrate's report and the trial court's order adopting it had been filed the same day, Civ.R. 53(E)(4)(c) afforded Navin fourteen days to the file objections . . . He failed to do so and, therefore, pursuant to Civ.R. 53(E)(b), he has waived the right to file an appeal from that judgment." Id. at 619.